[No. B128000. Second Dist., Div. One. Sept. 17, 1999.]

MARY LOU BROWN, Plaintiff and Appellant, v.
IRA J. BOREN et al., Defendants and Respondents.

**COUNSEL**

John S. Chang for Plaintiff and Appellant.

Gary A. Dordick for Defendants and Respondents.

**OPINION**

**MASTERSON, J.—**

### INTRODUCTION

Plaintiff Mary Lou Brown appeals from the adverse judgment entered after the trial court granted a motion for judgment (Code Civ. Proc.,

§ 631.8)[1] made by defendants Ira J. Boren and Elizabeth S. Boren at the conclusion of plaintiff's case. We affirm.

### STATEMENT OF FACTS[2]

In November 1992, plaintiff sold two pieces of real property to Ruffino M. Anderson (Anderson). These properties were located at 1009 East 56th Street and 1019-1021½ East 56th Street in Los Angeles, California. Anderson was a real estate agent with Century 21 A&W II and the person with whom plaintiff had listed her properties for sale. Plaintiff agreed to carry notes on each property for a portion of the purchase price.

The escrow instructions for the 1009 East 56th Street property listed the total consideration for the property as $80,000. Of this amount, $250 was to be deposited into escrow by Anderson, $31,500 represented an existing encumbrance of record (the approximate unpaid balance of a first trust deed), $23,250 represented the amount Anderson was to pay plaintiff from the proceeds of a loan to be obtained, and $25,000 was to be the amount of plaintiff's new purchase money third trust deed. The escrow instructions stated that "[a] new purchase money Third Trust Deed and Assignment of Rents [was] to record, . . . securing a Note in the amount of $25,000.00, executed by [Anderson] in favor of [plaintiff] . . . ." The instructions also provided that plaintiff's trust deed was to contain the following language: " 'This Trust Deed is Third and subject to a First Trust Deed of record and a Second Trust deed to record.' " In addition, the instructions stated that "[b]uyer herein agrees to obtain a new 2nd Trust Deed in a sufficient amount to procure $23,250.00 to be paid to seller at the close of escrow." Escrow was contingent upon Anderson obtaining financing "from an institutional lender, at the best prevailing rate." Plaintiff also agreed "to credit buyer the sum of $6,500.00 for repairs needed to subject property." (Italics omitted.) In an amendment to the escrow instructions, plaintiff gave Anderson credit for an additional $1,000 for termite work.

With regard to the 1019-1021½ East 56th Street property, the escrow instructions listed the total consideration as $130,000. Of this sum, $250 was to be provided by Anderson, $54,750 was the amount of the loan to be applied toward the purchase price, and $75,000 was to be the amount of plaintiff's new purchase money second trust deed. The escrow instructions provided that a "Deed of Trust (1st Trust Deed) [was] to record in favor of

---

[1] All statutory references hereinafter are to the Code of Civil Procedure.

[2] The reporter's transcript is not part of the appellate record. The testimony adduced at trial therefore is not before us. On our own motion, we have augmented the record on appeal to include the superior court file, as well as those trial exhibits admitted into evidence and lodged with this court by plaintiff.

any institutional lender, securing a note in the amount of $54,750.00 payable according to its terms, with interest at the best prevailing rate available, proceeds of which you are to collect and apply to purchase price." The instructions also stated that "Buyer . . . agrees to obtain a new 1st Trust Deed in a sufficient amount to procure $54,750.00 to be paid to seller at the close of escrow." In addition, "[a] new purchase money 2nd Trust Deed and Assignment of Rents [was] to record, . . . securing a Note in the amount of $75,000.00, executed by [Anderson] in favor of [plaintiff] . . . ." The instructions also specified that the trust deed to be prepared was to contain the following clause: " 'This Trust Deed is Second and subject to a First Trust Deed to record.' " This escrow, too, was contingent upon Anderson securing financing from an institutional lender. Plaintiff further agreed to credit Anderson $3,500 for repairs needed on the property. Via amendments to the escrow instructions, plaintiff gave Anderson an additional $2,000 in credit to correct a safety condition caused by a tree, as well as $2,500 in credit for termite work.

Anderson obtained financing from defendant Ira J. Boren, a real estate broker,[3] and his wife, rather than an institutional lender as specified in the escrow instructions. Anderson borrowed $35,000 for the 1009 East 56th Street property and $70,000 for the 1019-1021½ East 56th Street property. The amounts actually funded, however, totaled only $28,275.83 and $57,946.67, respectively. The notes for both properties, which were secured by deeds of trust, listed the yearly interest rate at 15 percent. The truth-in-lending disclosure statement for each property, however, reflects that the dollar value of the points was included in the finance charge resulting in a functional annual percentage rate of "38.734%" on the $35,000 loan for the 1009 East 56th Street property and a functional annual percentage rate of "26.209%" on the $70,000 loan for the 1019-1021½ East 56th Street property. Correspondence from defendant Ira J. Boren to the escrow officer reveals that defendants charged Anderson "[p]oints" in the amount of $5,200 on the $35,000 loan and $10,500 on the $70,000 loan.

Anderson also executed promissory notes to plaintiff in the amounts of $25,000 and $75,000. In accordance with the escrow instructions, the deed of trust securing plaintiff's $25,000 note specified that " 'THIS DEED OF TRUST IS THIRD (3rd) AND SUBJECT TO A FIRST (1st) TRUST DEED AND [A] SECOND (2nd) TRUST DEED OF RECORD.' " The deed of trust securing

---

[3]For purposes of background only, we note that in a declaration filed in support of his summary judgment motion defendant Ira J. Boren stated that he had been in the business of real estate investing for about 15 years. During that time, he provided investment capital to individuals. Those loans have been secured by first, second, third and even fifth trust deeds. Defendant Ira J. Boren estimated that he had done business with Anderson on approximately seven to twelve occasions.

plaintiff's $75,000 note stated that " 'THIS TRUST DEED IS SECOND (2nd) AND SUBJECT TO A FIRST TRUST DEED TO RECORD.' "

At the close of escrow, plaintiff received $10,512.08 from the sale of the 1009 East 56th Street property and $38,007.20 from the sale of the 1019-1021½ East 56th Street property, for a total of $48,519.28. Anderson, having deposited a total of only $500 into escrow, received a refund of $11,340.15 from the escrow on the 1009 East 56th Street property and $10,526.77 from the escrow on the 1019-10211/2 East 56th Street property, for a total refund of $21,866.92. Anderson subsequently defaulted on his obligations to plaintiff.

### PROCEDURAL BACKGROUND[4]

On March 12, 1997, plaintiff filed a complaint against the Boren defendants, as well as Anderson, Century 21 A&W II[5] and others who are not parties to this appeal. Plaintiff alleged five causes of action for fraud, breach of fiduciary duty, quiet title, declaratory relief, and injunctive relief, respectively.

The thrust of plaintiff's first cause of action for fraud was that Anderson defrauded her out of her property. Plaintiff alleged that Anderson falsely represented the sums of money he was going to borrow, that he would pay plaintiff all loan proceeds and that he needed to spend thousands of dollars to make repairs and improvements to the property. Plaintiff alleged that in reliance on these misrepresentations, she sold Anderson her properties, gave Anderson credit for the sums he had incurred or would later incur for repairs and improvements, and agreed to subordinate her purchase money trust deeds to two trust deeds in favor of an institutional lender. Plaintiff further alleged that Anderson's statements were false, in that he borrowed more money than he said he would, pocketed the excess over the amount of loan proceeds paid to plaintiff, caused trust deeds to be recorded in favor of the Borens in amounts greater than had been agreed, and failed to incur or pay the amounts he stated he had incurred, or would incur, for repairs and improvements. As to the Borens, plaintiff alleged that they conspired with Anderson to defraud her. Specifically, plaintiff alleged that they "acted with and shared a common plan with Anderson to defraud plaintiff, and each of them conspired in, planned, participated or joined in, assisted, aided and abetted and reaped the profits from such activities, causing plaintiff damages." These fraud and civil conspiracy allegations where incorporated by

---

[4]Additional facts and procedure will be incorporated into the legal discussion where relevant.

[5]Prior to the commencement of trial, plaintiff dismissed this action as to Century 21 A&W II without prejudice.

reference into plaintiff's breach of fiduciary duty cause of action, as well as each of her equitable causes of action.

In her cause of action for quiet title, plaintiff alleged that she would not have subordinated her trust deeds "[w]ere it not for the fraud perpetrated on her by defendants." Plaintiff also alleged that "the principal amounts of the Boren Trust Deeds were bogus and fraudulent" and that "since [she] was fraudulently induced to execute the documents which resulted in [her] Trust Deeds being junior to the Boren Trust Deeds, the Boren Trust Deeds are void and/or voidable at plaintiff's option." Plaintiff stated that by filing this action she elected to void the Borens' trust deeds. In the 33d paragraph of her complaint, she claimed an entitlement "to hav[ing] the Boren Trust Deeds ordered reconveyed, expunged and/or subordinated to each of the Plaintiff Trust Deeds, as of approximately November 2, 1992, so as to clear plaintiff's title to the properties of the cloud created by the recordation of the Boren Trust Deeds." Plaintiff incorporated these additional fraud allegations into her declaratory and injunctive relief causes of action, in which she respectively asked for a declaration of the matters alleged in paragraph 33 of the complaint and an order enjoining foreclosure on the Boren trust deeds.

Plaintiff prayed for compensatory and punitive damages on her fraud and breach of fiduciary duty causes of action. She further requested equitable relief, including a readjustment of priorities, on her remaining equitable causes of action. Plaintiff did not include a breach of contract cause of action in her complaint. Thus, apart from the fraud allegations, plaintiff did not assert a contractual theory of recovery as an independent basis for readjustment of priorities.

Prior to and in preparation for trial, the parties stipulated, and the court ordered, that the following issues were to be tried: "(a) Did defendant[] . . . Anderson . . . commit actionable fraud as to plaintiff? [¶] (b) Did defendant[] Anderson . . . breach any fiduciary duties owed plaintiff? [¶] (c) What are the nature and amount of the damages suffered by plaintiff? [¶] (d) Did defendant Ira J. Boren conspire with Anderson to defraud plaintiff? [¶] (e) Was any defendant guilty of oppression, fraud or malice? [¶] (f) Should punitive damages be assessed against any defendant and if so, the amount thereof. [¶] (g) Should the Court expunge the trust deeds in favor of defendant Ira J. Boren and Elizabeth S. Boren . . . which now encumber the properties at 1009 and 1019-1021-1/2 E. 56th Street, Los Angeles . . . or in the alternative subordinate the Borens' trust deeds to plaintiff's trust deeds?" The parties, as well as the court, acknowledged the equitable nature of the latter issue.

Before the commencement of trial, Anderson filed for bankruptcy protection. That effectively stayed this matter as to Anderson. Accordingly, the

matter proceeded to trial before the court as to the Borens only. After the close of plaintiff's case, defendants made a motion for judgment pursuant to section 631.8.[6] Defendants filed points and authorities in which they argued that judgment under section 631.8 was warranted, in that there was no evidence of fraud or of any agreement or scheme to defraud plaintiff.

The trial court granted defendants' motion for judgment. Thereafter, plaintiff filed a written request for a statement of decision. The court ordered defendants to prepare and submit a proposed statement of decision. Defendants did so. Plaintiff objected to the proposed statement of decision and submitted a new proposed statement of decision, which read as follows:

"This bifurcated case as to defendants IRA J. BOREN and ELIZABETH S. BOREN (the 'Borens') having been tried to this Court, the Borens having made a motion for nonsuit [*sic*] under Code of Civil Procedure § 631.8 after plaintiff rested, the Court having announced a tentative decision granting such motion after the parties submitted on June 10, 1998, and plaintiff having timely requested a statement of decision under Code of Civil Procedure § 632, the Court hereby explains the factual and legal basis for its decision granting the Borens' motion for nonsuit [*sic*]:

"1. The evidence established that the Borens were private lenders, not institutional lenders. Defendant Ruffino M. Anderson ('Anderson') the Borens' debtor, purchased plaintiff's two properties at 1009 and 1019-1021-1/2 E. 56th Street, Los Angeles, California (the 'Subject Properties') in November 1992 for prices of $80,000 and $130,000 respectively.

"2. The Borens lent money to Anderson to finance his purchase of the Subject Properties. The Borens negotiated a legitimate business deal conforming to the custom and practice of the industry and obtained two trust deeds to secure the loans they made ('Borens' Trust Deeds') which were recorded prior in time to the recordation of the two purchase-money trust deeds which plaintiff received ('Plaintiff's Trust Deeds') for the balance of the purchase price of the Subject Properties.

---

[6]Section 631.8, subdivision (a) provides: "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence. The court may consider all evidence received, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence to rebut evidence received during the presentation of evidence deemed by the presenting party to have been adverse to him, and to rehabilitate the testimony of a witness whose credibility has been attacked by the moving party. Such motion may also be made and granted as to any cross-complaint."

"3. Plaintiff signed the escrow instructions wherein she agreed that Borens' Trust Deeds would be recorded before Plaintiff's Trust Deeds.

"4. Plaintiff in fact received the downpayment which she was promised by Anderson, a sum of approximately $50,000. Plaintiff received the monthly interest payments Anderson promised her for approximately four years.

"5. Plaintiff never met the Borens before this lawsuit. The Borens never made any promises to plaintiff and plaintiff never relied on anything the Borens did.

"6. There is no evidence of a scheme in which the Borens participated to defraud plaintiff. There is no evidence that the Borens unlawfully plotted or conspired to commit an unlawful act. The Borens did not agree to defraud plaintiff. There is no evidence of any agreement, implied or express, to commit an unlawful act. The Borens and Anderson had an arms-length business transaction. The Borens never had any contact whatsoever with plaintiff.

"7. Plaintiff's Trust Deeds were given to her for the price of the Subject Properties, at the time of conveyance to Anderson of the title to such properties.

"8. The escrow instructions pertaining to the purchase and sale of the Subject Properties (the 'Escrow Instructions') constituted the contract between plaintiff and Anderson with respect to such purchase and sale.

"9. The Escrow Instructions provided that the loans which Anderson was to obtain in order to pay part of the purchase price of the properties at 1009 and 1019 E. 56th Street shall be for $23,250.00 and $54,750.00 respectively.

"10. The Escrow Instructions further provided that Plaintiff's Trust Deeds would be recorded just after the recordation of the trust deeds given to secure the loans which Anderson was to obtain in order to pay part of the purchase price of the Subject Properties.

"12.[7] The Escrow Instructions further provided that all of the proceeds of the loans which Anderson was to obtain in order to pay part of the purchase price of the Subject Properties shall be paid to plaintiff towards the purchase price.

---

[7] Paragraph 11 was omitted.

"13. With respect to the escrow instruction for the property at 1019 E. 56th Street, it specifically provided that the deed of trust to record in favor of the lender shall be for the purpose of securing a note in the amount of $54,750.00.

"14. Defendant Ira J. Boren was furnished complete copies of the Escrow Instructions at the time they were entered into and before he funded the loans secured by the Borens' Trust Deeds. Defendant Ira J. Boren knew the terms and provisions contained in the Escrow Instructions.

"15. The trust deed given to the Borens which secured the loan they made on the property at 1009 E. 56th Street secured a promissory note from Anderson to the Borens for $35,000. Plaintiff was not informed of this and did not agree to this, nor did plaintiff otherwise gain knowledge of this.

"16. The trust deed given to the Borens which secured the loan they made on the property at 1019 E. 56th Street secured a promissory note from Anderson to the Borens for $70,000. Plaintiff was not informed of this and did not agree to this, nor did plaintiff otherwise gain knowledge of this.

"17. Together, the Boren Trust Deeds secured promissory notes totaling more than $78,000. Plaintiff was not informed of this and did not agree to this, nor did plaintiff otherwise gain knowledge of this.

"18. The net proceeds of the loans from Borens secured by the Boren Trust Deeds totaled $86,225.50. Plaintiff was not informed of this and did not agree to this, nor did plaintiff otherwise gain knowledge of this.

"19. Anderson received $21,866.92 of the net proceeds of the loans from Borens secured by the Boren Trust Deeds. Plaintiff was not informed of this and did not agree to this, nor did plaintiff otherwise gain knowledge of this.

"20. Plaintiff agreed to give Anderson credits toward the purchase price of the Subject Properties for repairs and upgrades which Anderson promised to make. These credits totaled $10,000.00.

"21. At the closing of the two escrows through which plaintiff sold the Subject Properties to Anderson, she received $48,519.28 plus two promissory notes of $25,000 and $70,000 secured by the Plaintiff's Trust Deeds.

"22. Plaintiff is not entitled to the equitable relief she seeks by way of a court decree that the Borens' Trust Deeds shall be junior to the Plaintiff's Trust Deeds.

"The foregoing explains the legal and factual basis of the Court's decision with respect to each of the principal controverted issues in the within action. To the extent plaintiffs have claimed there are other 'controverted issues' which are not explained above, the Court finds that such other 'controverted issues' are unnecessary to the Court's decision. (Vukovich v. Radulovich (1991) 235 Cal.App.3d 281, 294 [286 Cal.Rptr. 547].)"

Defendants objected to paragraphs 12 through 20 of plaintiff's proposed statement of decision on the ground that those findings were unnecessary to the decision and contrary to the weight of the evidence. Specifically, defendants argued that paragraph 12 was not necessary to the decision and that paragraph 14 was both unnecessary "and contrary to the testimony of Ira Boren who stated that he did not receive a copy of the escrow instructions and was unaware of the terms and provisions contained therein." Defendants further argued that paragraphs 15 through 19 were not necessary "and contrary to the evidence which established that Ms. Brown signed the escrow instructions and otherwise acknowledged the amounts of the Borens loans."

The trial court ultimately adopted plaintiff's proposed statement of decision as its own without modification. Thereafter, judgment was entered in favor of defendants. In the judgment, the court reiterated its findings that "there was no fraud and there was no conspiracy to defraud" and "there is no basis for equitable or other relief."

Following the entry of judgment, plaintiff filed notice of her intention to move for a new trial on her causes of action for equitable relief only (third, fourth and fifth causes of action). Her motion was made on the ground that the trial court's decision denying her equitable and/or injunctive relief was contrary to law (Code Civ. Proc., § 657, subd. 6). In her points and authorities, plaintiff expressly stated that "[she] does not quarrel with the Court's ruling with respect to the fraud/conspiracy cause of action." She did, however, request a new trial "[w]ith respect to the equitable cause of action for a readjustment of the priorities of the deeds of trust." The trial court denied plaintiff's motion for new trial, explaining "[t]here was no formal subordination agreement and the court did not find a basis for automatic subordination." This appeal followed.

CONTENTION

Plaintiff contends the Borens' failure to comply with conditions of subordination resulted in a loss of priority of their trust deeds and, consequently, the trial court improperly denied her request for equitable relief in the form

of readjustment of priorities. As explained below, plaintiff's contention is premised on a contract based theory of recovery that was not pleaded in the complaint or set forth in the parties' trial stipulation designating the issues to be tried. Moreover, plaintiff has failed to provide this court with an adequate record from which this court can ascertain whether plaintiff tried her case on a contractual theory.

DISCUSSION

*A Claim of Loss of Priority Is Based on Principles of Contract Law*

**(1)** As noted in *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023, 1029-1030 [96 Cal.Rptr. 338], "[s]ubordination is, strictly speaking, a status, not an agreement or form of litigation. It refers to the establishment of priority between different existing encumbrances on the same parcel of property, by some means other than the basic priority involved in the concept of 'first in time, first in priority,' or the automatic priority accorded purchase money liens. [Citation.] [¶] By statute, a purchase money deed of trust is prior to other liens on real property. [Citation.] But banks and savings and loan institutions may not lend money on the security of real property unless they hold first liens. [Citation.] The two common methods of arranging for the commercial lender to hold the first lien include: (1) an express subordination agreement in which the seller agrees to make his lien junior to the lender's; (2) recording the lender's trust deed before the seller's. [¶] . . . This latter type of subordination situation has been referred to as 'automatic subordination.' "

■ There is an "automatic subordination" "when, without any express executory agreement to subordinate on specified conditions, the escrow instructions provide that the lender's construction loan deed of trust is to be recorded prior to the vendor's purchase money deed of trust." (3 Witkin, Summary of Cal. Law (9th ed. 1987) Security Transactions in Real Property, § 47, p. 557.) "This kind of arrangement is frequently accomplished in a single escrow and pursuant to an agreement that the seller of the property will take a second trust deed for the unpaid balance of the purchase price and the buyer will contemporaneously execute a note and first trust deed in favor of a lender. It has been argued that an agreement to record one instrument before another is not a true subordination agreement, since the rank of the liens is not altered by agreement but results from the operation of the recording statutes. The courts, however, have characterized it as subordination and applied subordination rules to determine the rights and obligations of the parties to the agreement." (4 Cal. Real Estate Law & Practice (1999) Subordination, § 114.04[3], pp. 114-11 to 114-12, fns. omitted.)

*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023, involved an appeal from an order of dismissal entered after the trial court sustained defendants' demurrer without leave to amend in a complicated land development action. The sellers executed a land sale contract with buyer-developers. A portion of the purchase price was to be paid by a purchase money deed of trust. The buyer was to obtain a construction loan. The bank escrow between the seller and buyer provided that the lender would obtain priority over the seller's trust deed "by priority of recording" rather than by a formal subordination agreement. (At p. 1027.) The seller sued the lender, alleging causes of action "based essentially on the failure of lender to limit the use of the loan funds to construction purposes." (*Ibid.*) The complaint alleged the buyer represented to the seller that the funds obtained from the lender would be used solely for construction of improvements on the property; "based on these representations, the seller agreed to the terms." (*Id.* at p. 1028.) The complaint further alleged that the lender had knowledge of seller's trust deeds and voluntarily undertook to control disbursements from the loan proceeds but the lender disbursed $300,000 for purposes other than construction. (*Id.* at p. 1029.)

In reversing the judgment of dismissal, the *Middlebrook-Anderson Co.* court concluded that "the duties owed by a lender to a seller under a formal subordination agreement do not differ from the duties owed by a lender to a seller when the lender obtains priority over the seller under an agreement by the seller to record after the lender." (*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d at p. 1029.) A claim of loss of priority is based on principles of contract law. (*Id.* at p. 1033.) A *"lender's claim to priority flows from the agreement between the seller and the buyer. It is only as a result of the seller's waiver of his statutory right to a first lien that the lender achieves priority. Thus, the lender is a third party beneficiary in the seller-buyer agreement, but only to the extent that it abides by the conditions of subordination. If the lender does not comply with the seller's conditions it does not achieve priority.* Since one condition to priority is the proper use of the construction loan funds, the priority of the construction loan lien does not vest until such time as the funds are applied to the construction purpose. [Citation.]" (*Ibid.*, italics added.)

The court rejected the lender's argument that there could be no loss of priority, in that there was no subordination agreement, stating, "In our view there is no justification, legal or otherwise, which would call for a different result whether the seller in a joint transaction records first and then agrees that his lien will be subordinated or whether he agrees that the lender may achieve priority through first recording." (*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d at p. 1034.) The court

also discussed the policy reasons warranting the protection of sellers in subordination situations. (*Id.* at pp. 1036-1037.)

In *In re Sunset Bay Associates* (9th Cir. 1991) 944 F.2d 1503, 1513, the Ninth Circuit concluded "that under California law, when a seller subordinates his purchase money lien to a lender's lien by permitting the lender to record first, and the lender knows that the seller has agreed to record his deed second for the purpose of affecting [*sic*] a subordination, the priority of the lender's lien is contingent upon the fulfillment of any conditions stated in the seller's lien, whether or not the lender has actual knowledge of those conditions at the time the deeds are recorded." In *Protective Equity Trust #83, Ltd.* v. *Bybee* (1991) 2 Cal.App.4th 139 [2 Cal.Rptr.2d 864], the court reached a similar conclusion, holding "that the terms of the agreement between seller and buyer were breached by buyer and that the agreement is therefore unenforceable by lenders. Since we have determined that the priority of recording was based only on the subordination agreement, upon failure of that agreement the priority must be reversed and seller's trust deed must be deemed to be senior to lenders' trust deed." (At p. 151.)

■ Plaintiff "does not question the sufficiency of [the court's] factual findings, does not claim that these findings are unsupported by the evidence or that they are otherwise erroneous or deficient." Rather, she adopts them. Having done so, plaintiff contends that, as a matter of law, those findings compel the legal conclusion that her purchase money trust deeds must be given priority over defendants' trust deeds and that the trial court improperly denied her equitable relief. Not so. Plaintiff's argument presupposes that she tried her case on a contract theory. As now explained, plaintiff has failed to provide this court with an adequate record demonstrating that she did so.

*The Record Fails to Substantiate Plaintiff's Assertion That This Case Was Tried on a Contract Theory*

■ It is a firmly entrenched principle of appellate practice that litigants must adhere to the theory on which a case was tried. Stated otherwise, a litigant may not change his or her position on appeal and assert a new theory. To permit this change in strategy would be unfair to the trial court and the opposing litigant. (*Mattco Forge, Inc.* v. *Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 399 & 400, pp. 451-453; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1998) ¶ 8:229, pp. 8-106 to 8-107.) To be sure, we have discretion to consider a new theory on appeal when it is purely a matter of applying the law to undisputed facts. (*Yeap* v. *Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680]; *Mattco*

*Forge, Inc.* v. *Arthur Young & Co.*, *supra*, 52 Cal.App.4th at p. 847.) We are unable to confirm or refute plaintiff's characterization of the evidence in this case as "uncontroverted," however. As noted previously, there is no reporter's transcript on appeal.

At oral argument, plaintiff's counsel represented that this case was tried on theories of fraud and conspiracy, as well as contract. Although there is no question that plaintiff pursued a fraud and conspiracy theory at trial, we are unable to ascertain whether she also tried her case on a contract theory. Plaintiff's counsel did not designate a reporter's transcript as part of the appellate record, apparently believing that such a transcript was unnecessary for a resolution of the issues to be raised on appeal. Without a record of the oral proceedings below, we must look to other indicators that illuminate the theory or theories on which this case actually was tried. Looking first to the complaint, as we noted *ante*, plaintiff did not allege Anderson's breach of contract. Her complaint is equally devoid of any allegation that the Borens were third party beneficiaries of her contracts with Anderson who lost their priorities because they failed to comply with the conditions of subordination. The allegations in the complaint sound only in fraud and conspiracy to defraud. Although plaintiff requested equitable relief, including a readjustment of priorities, the premise upon which that relief was sought appears to be Anderson's and defendants' alleged fraudulent and conspiratorial conduct.

Additional documents in the superior court file indicate that plaintiff proceeded against the Boren defendants solely on a conspiracy to defraud theory. In her opposition to the Borens' motion for summary judgment, which the court denied on procedural grounds, plaintiff characterized her five causes of action as follows: First cause of action—"Fraud: Anderson defrauded plaintiff by his false representations concerning the character of the transaction. . . . [T]he Borens conspired with Anderson and made it possible for Anderson to carry out his scheme." Second cause of action—"Breach of Fiduciary Duties: Anderson was plaintiff's fiduciary and in defrauding plaintiff, he breached such fiduciary duties. . . . [T]he Borens conspired with Anderson and made it possible for Anderson to carry out his scheme." Third cause of action—"Quiet Title: Plaintiff seeks to expunge or void the trust deeds given to the Borens to which she was fraudulently induced to subordinate the trust deeds she took back to secure the balance of the sale prices." Fourth cause of action—"Declaratory Relief: Plaintiff seeks judicial declaration that the trust deeds given her are senior to the trust deeds fraudulently given to the Borens." Fifth cause of action—"Injunctive Relief: Plaintiff seeks to enjoin any foreclosure actions based on the trust deeds given to the Borens."

After characterizing each of her five causes of action, plaintiff stated, "Thus, in each of the five causes of action of the complaint, plaintiff's theory of recovery against the Borens is based on the fact that the Borens conspired with Anderson." Plaintiff further argued that "[t]he Borens' [*sic*] may be liable for having conspired with Anderson, by doing acts which furthered or made possible Anderson's acts of fraud and breach of his fiduciary duties to plaintiff."

In her opposition to defendants' motion for judgment on the pleadings, also denied on procedural grounds, plaintiff characterized her causes of action in the same manner as she had in opposition to defendants' motion for summary judgment. Once again, she stated that as to each of her causes of action her "theory of recovery against the Borens is based on the fact that the Borens conspired with Anderson." Her legal arguments were consistent with her stated civil conspiracy theory of recovery against defendants. Specifically, plaintiff argued that her "complaint adequately states a claim against the Borens based on their having conspired with Anderson to defraud [her] and to breach Anderson's fiduciary duties to [her]." (Fn. omitted.)

The parties' stipulation delineating the issues to be tried further dispels any possibility that plaintiff proceeded to trial on a contract theory. That stipulation makes no reference to any breach of contract.

Prior to trial, plaintiff filed a trial brief in which she set forth her factual contentions as follows: Anderson had defrauded her into selling the two properties. Anderson's fraud consisted of his false representations that he would obtain a conventional loan from an institutional lender at the best prevailing rate, all loan proceeds would be paid to plaintiff toward the purchase price, and if plaintiff gave him a credit in escrow, he would use the money to fix the properties. Plaintiff argued that despite these representations, Anderson obtained loans from the Borens at interest rates exceeding 38 percent. Moreover, Anderson did not give all the loan proceeds to plaintiff. Rather, the Borens took $18,777.50 off the top as points. Anderson also received $21,866.92 as a refund when escrow closed even though he deposited only $500 into escrow.

With respect to the Borens, plaintiff contended in her trial brief "[they] knew that Anderson was perpetrating a fraud on plaintiff, but became willing participants in the fraudulent scheme and provided the funds as part of this scheme, because they stood to collect exorbitant fees and interest, and wanted to ultimately 'steal' the propert[ies] by foreclosing on them." Stated otherwise, "the Borens knew that Anderson was committing fraud on plaintiff, and breached his fiduciary duties to plaintiff as her real estate agent.

Despite this knowledge, the Borens, for personal gain, went along with Anderson's scheme, made it possible for Anderson to perpetrate his fraud and breach of fiduciary duties, and therefore were co-conspirators with Anderson."

Citing *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023 for the first time, plaintiff made two further arguments. First, although the Borens were not in privity with her, they owed her a duty to see that the loan funds were applied properly. Second, the lender and borrower could not make a material modification of the loan to the detriment of the seller. Based on the foregoing arguments, plaintiff asserted that she was entitled to void the subordination of her trust deeds. At this juncture, plaintiff apparently did not appreciate fully the contractual nature of her request to readjust the priorities, for she never sought leave to amend her complaint to permit recovery on this theory. There also is no indication that plaintiff attempted to expand the stipulation specifying the issues to be tried to encompass a contract theory. Moreover, argument is not evidence. Plaintiff's citation of *Middlebrook-Anderson Co.* in her initial trial brief is not proof that she actually tried her case on a breach of contract theory.

At oral argument, plaintiff pointed to her supplemental trial brief, submitted in opposition to defendants' motion for judgment, as evidence that this case was tried on a contract theory. Although plaintiff opposed defendants' motion in significant part by arguing the case that defendants failed to abide by the conditions of subordination, defendants' points and authorities in support of their motion for judgment suggest that plaintiff only tried her case on a fraud and conspiracy theory.

As explained in *Roth* v. *Parker* (1997) 57 Cal.App.4th 542, 549 [67 Cal.Rptr.2d 250], " ' "[t]he purpose of Code of Civil Procedure section 631.8 is to enable a trial court which, after weighing the evidence at the close of the plaintiff's case, is persuaded that the plaintiff has failed to sustain [her] burden of proof, to dispense with the need for the defendant to produce evidence. . . ." . . . Thus, section 631.8 serves the same purpose as does section 581c, which permits the court to grant a nonsuit in a jury trial.' " (Citations omitted.) In order to prevail on its motion for judgment, therefore, defendants had to demonstrate that plaintiff failed to sustain her burden of proof on all theories presented. Defendants' supporting points and authorities contain no contractually based argument. Defendants only argued that there was no evidence of fraud and no evidence of a civil conspiracy. This is a compelling indication that plaintiff did not try her case on a contract theory.

Next, counsel referred to plaintiff's motion for new trial in an effort to convince this court that plaintiff had tried her case on a contract theory. In

her motion for new trial, plaintiff argued that she had agreed to subordinate her purchase money trust deeds by recording them after the Boren trust deeds were recorded provided that the Borens complied with the conditions of subordination. Inasmuch as the Borens had not done so, their trust deeds lost their priority relative to plaintiff's trust deeds. In her reply, plaintiff asserted that a formal subordination agreement was not necessary for the result she sought. Rather, she urged application of "a court created doctrine of 'automatic subordination' or 'subordination by subsequent recording[,]'" citing *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023. Finally, she maintained that "[t]he key issue relating to plaintiff's motion for new trial is whether she is entitled to have the court re-order the relative priorities of plaintiff's vendor's liens and the Borens' purchase money liens."

In other words, plaintiff's motion for new trial stated what would have been the winning argument if the case had been tried on a contract theory. It does not necessarily follow, however, that the case in fact was tried on such a theory.

Lastly, at oral argument, plaintiff's counsel referred to findings 12 through 21 of the statement of decision as further support for his assertion that the case was tried on a contract theory. Had it not been so tried, he argued, there would have been no reason for the court to make these findings. We disagree. For the most part, findings 12 through 21 appear to construe the documentary evidence adduced at trial and/or address other allegations upon which plaintiff's fraud and conspiracy theories were premised.

In sum, plaintiff has failed to demonstrate that, along with her fraud and conspiracy theories, she tried this case on a contract theory. Without a reporter's transcript, we cannot determine whether the facts underlying such a theory are uncontroverted. As a consequence, we cannot consider this theory on appeal.

*In the Absence of Demonstrated Error, the Judgment Is Presumed to Be Correct and Must Be Affirmed*

As noted in *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227], "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness." Plaintiff has the "burden of overcoming this presumption by showing error on an adequate record." (*Stevens* v. *Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1657 [57 Cal.Rptr.2d 525]; accord, *Maria P.* v. *Riles* (1987) 43 Cal.3d 1281,

1295 [240 Cal.Rptr. 872, 743 P.2d 932].) Plaintiff has failed to do so. To reiterate, plaintiff has failed to provide this court with an adequate record from which we can ascertain whether she tried her case on a breach of contract theory. It necessarily follows that plaintiff also has failed to demonstrate that the trial court abused its discretion in denying her equitable relief. (*Health Maintenance Network* v. *Blue Cross of So. California* (1988) 202 Cal.App.3d 1043, 1056 [249 Cal.Rptr. 220].)

The judgment is affirmed.

Vogel (Miriam A.), J., concurred.

**SPENCER, P. J.**—I respectfully dissent. In my view, the record before us amply demonstrates that this case was tried on a contractual theory as well as the stated claim against the Borens of conspiracy to defraud. Had the case not been tried on a contractual theory, there would have been no reason for the trial court to render findings 12 through 21 in its statement of decision.

Findings 12 through 21, as well as many of the court's other findings, detail the escrow instructions that constituted the agreements between Anderson and plaintiff. These findings set forth the precise loan amounts that Anderson was to obtain and the requirement that all loan proceeds be paid to plaintiff. The findings further describe the extent to which Anderson's conduct in obtaining financing to purchase the properties deviated from the escrow instructions, the extent to which the Borens' loans exceeded the limitations on the loan amounts and the extent to which the loan proceeds were not paid to plaintiff. The court's findings further catalog the extent to which Boren, though armed with knowledge of the escrow agreements and their contents, nevertheless proceeded to loan Anderson excessive sums and to accept trust deeds securing those excessive sums contrary to plaintiff's knowledge and agreements with Anderson.

Contrary to the view of my colleagues, I see little relevance in these particular findings to plaintiff's conspiracy to defraud theory. They have meaning only in the context of a contractual theory of recovery. Such a theory necessarily underlies a claim of loss of priority and calls for a readjustment of priorities. This was the precise relief plaintiff asked for in her complaint.

Numerous other considerations compel the conclusion that plaintiff tried her case on a contract theory. For example, plaintiff filed a trial brief in which she cited *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.* (1971) 18 Cal.App.3d 1023 [96 Cal.Rptr. 338] as support for her argument

that "[t]he law in California is that a lender whose lien took priority because the seller agreed to subordinate the seller's vendor lien to the lender's lien has an express or implied duty to the seller to see to the proper application of the loan funds, and that a lender and a borrower may not bilaterally make a material modification in the loan to which the seller has subordinated, without the knowledge and consent of the seller to that modification, if the modification materially affects the seller's rights." Thus, plaintiff argued, "the Borens were under an obligation, for the benefit of plaintiff, to ensure that all the loan funds were properly applied and to police the loans they made to Anderson in order not to increase the risk that the vendor's lien which plaintiff subordinated to the Borens is not 'wiped out' due to Anderson's systematic looting of the properties' income and revenues."

In her trial brief, plaintiff further argued that "[t]he subordination of plaintiffs' vendor liens to the trust deeds given to the Borens was invalid because the loans were not from a source which plaintiff approved: from institutional lenders. Furthermore, unbeknownst to plaintiff, less than the full amounts of the loans from the Borens were used to pay the purchase price, which was also one of the specific conditions to the subordination: The Borens deducted almost $24,000 in loan fees and prepaid interest up front, and $21,866.92 of the net loan proceeds went into Anderson's pockets. Thus, of the total of $110,000 in loans which plaintiffs subordinated to, only $64,000 was used to pay towards the purchase prices of the properties! [¶] Plaintiff is entitled to void the subordination."

Plaintiff also filed a supplemental trial brief in opposition to defendants' motion for judgment. She argued therein that the Borens' trust deeds failed to comply with the conditions of subordination and that this failure resulted in a loss of priority of the Borens' trust deeds. Plaintiff further quoted from that portion of the *Middlebrook* decision in which the court explained that a lender's claim to priority flows from the agreement between the seller and the buyer and only results from the seller's agreement to waive his or her statutory right to a first lien and the lender is a third party beneficiary of the agreement between the seller and buyer but only insofar as it complies with the conditions of subordination and does not achieve priority absent compliance with the seller's conditions of subordination. (*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra*, 18 Cal.App.3d at p. 1033.)

Moreover, in her motion for new trial, in reliance on *Middlebrook*, plaintiff again argued that the Borens were third party beneficiaries of the agreements between herself and Anderson and that as the result of the Borens' failure to comply with the conditions of subordination, they never achieved priority. If, in fact, plaintiff had not advanced this contractual

theory of recovery at trial, defendants surely would have opposed, and the trial court would have denied, plaintiff's new trial motion on that ground. But that is not what happened. Rather, defendants opposed plaintiff's motion on the merits, arguing, among other things, that there was no subordination agreement and that the Borens were unaware that there was a subordination agreement limiting the amount of their loans.

In addition, the trial court denied plaintiff's motion for new trial on the ground that "[t]here was no formal subordination agreement" and that "the court did not find a basis for automatic subordination." This is extremely significant. It demonstrates that the trial court's decision to deny equitable relief did not result from plaintiff's failure to try her case on a contractual theory but rather stemmed from the court's legal determination that plaintiff's contractual theory should be rejected in light of its finding there was no formal subordination agreement or grounds for automatic subordination. The trial court's ruling, when viewed in conjunction with plaintiff's legal argument in support of her motion for new trial, reflects that plaintiff had in fact proceeded to trial on a contractual theory but the trial court ruled against her on that theory, finding that there was no formal subordination agreement and no basis for automatic subordination.

That plaintiff proceeded to trial on a breach of contract theory is further buttressed by what was *not* said by defendants' counsel during oral argument in this matter. During his oral presentation to this court, and in response to this court's inquiries, plaintiff's counsel represented that he tried this case on two independent theories. The first theory was fraud and conspiracy for which plaintiff sought monetary damages. The second theory was contractual in nature. According to plaintiff's counsel, in pursuing this latter theory, plaintiff sought equitable relief through a readjustment of priorities between her trust deeds and those of defendants. Although defendants' counsel had ample opportunity to do so, he never denied that the case had been tried on a contractual theory. Instead, he remained silent in the face of plaintiff's counsel's representations to the contrary. Defense counsel's silence is significant and in effect can be construed as an implied admission that the case was tried on a contractual theory. Defendants do not argue that plaintiff is attempting to shift theories on appeal.

For the foregoing reasons, I conclude that plaintiff actually tried her case on a contractual theory. Neither plaintiff's failure to plead a cause of action for breach of contract nor the parties' stipulation listing the issues to be tried compels a contrary result. "It is a time honored rule that where the parties and the court proceed throughout the trial upon a theory that a certain issue is presented for adjudication, the doctrine of estoppel precludes either party

from thereafter asserting that no such issue was in controversy, even though it was not actually raised by the pleadings." (*People* v. *Nahabedian* (1959) 171 Cal.App.2d 302, 306 [340 P.2d 1053].) The same rational should preclude either party from asserting the issue was not in controversy because it was not enumerated in a stipulation designating issues. More fundamentally, defendants have never asserted that plaintiff did not try her case on a contractual theory. This court should not do so independently.

While I agree that there was no formal subordination agreement, I cannot and do not agree with the trial court's determination that there was no basis for automatic subordination. Its findings of fact in its statement of decision, which are not challenged by plaintiff or defendant on appeal, compel the conclusion that the equitable relief should have been granted.

The Borens' claim to priority emanated from the agreements between plaintiff and Anderson. The Borens' trust deeds only achieved priority over plaintiff's by virtue of plaintiff's agreement to have her trust deeds recorded after the Borens' trust deeds. Thus, as to the 1019-1021½ East 56th Street property, the Borens achieved priority on account of plaintiff's waiver of her statutory right to a first lien. With respect to the 1009 East 56th Street property, the Borens achieved priority over plaintiff only as the result of plaintiff's waiver of her right to a second lien. Thus, the Borens were third party beneficiaries of the agreement between plaintiff and Anderson to the extent they complied with the conditions of subordination. The Borens knew the terms and conditions set forth in the escrow instructions. Here, the conditions of subordination were not satisfied. (*Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn.*, *supra*, 18 Cal.App.3d at pp. 1032-1033.)

The trial court determined that the escrow instructions constituted the agreements between plaintiff and Anderson regarding the purchase and sale of the two properties. The court also determined that plaintiff agreed that her trust deeds were to be recorded just after recordation of the trust deeds given to secure the loans Anderson was to obtain to pay part of the purchase price and that defendants' trust deeds were recorded prior to plaintiff's trust deeds. Thus, the trial court necessarily found that plaintiff agreed to subordinate, and in fact did subordinate, her trust deeds to defendants' trust deeds. Moreover, the court found that defendant Ira J. Boren had been furnished complete copies of the escrow instructions at the time they were executed and before he funded the loans and that he therefore knew the terms and provisions set forth in the escrow instructions.

Having received copies of the escrow instructions, the Borens knew that Anderson had agreed to obtain his loans from an institutional lender at the

best prevailing rate. Yet Boren, a private lender, proceeded to loan Anderson money in excess of the agreed-upon loan amounts at functional annual percentage rates in excess of 38 and 26 percent.

The trial court further found the escrow instructions provided that Anderson was to obtain two loans to pay for a portion of the purchase price of the properties. The loan for the 1009 East 56th Street property was to be in the amount of $23,250. The loan for the 1019-1021½ East 56th Street property was to be in the amount of $54,750. Thus, the total amount to be borrowed for both properties was to be $78,000. The escrow instructions also provided that all of the loan proceeds were to be paid to plaintiff towards the purchase price. In addition, the trial court found the escrow instructions for the 1019-1021½ East 56th Street property specifically provided that the lender's deed of trust "shall be for the purpose of securing a note in the amount of $54,750.00."

The trial court also determined that Anderson failed to comply with the limitations on the loan amounts and failed to comply with that provision requiring him to pay all loan proceeds to plaintiff. Specifically, the trial court found that the trust deed given to defendants to secure the loan they made on the 1009 East 56th Street property secured a promissory note for $35,000 (rather than $23,250). The trust deed given to defendants to secure the loan for the other property secured a promissory note for $70,000 (rather than $54,750). Thus, defendants' trust deeds secured promissory notes in excess of $78,000. The net proceeds of the loans totaled $86,225.50 of which $21,866.92 was returned to Anderson who only had deposited the paltry sum of $500 into escrow. Plaintiff was not informed of any of these facts, did not agree to them and did not otherwise gain knowledge of them.

Reversal of the judgment is compelled by the trial court's findings. Anderson agreed to borrow a total of $78,000. Anderson did not do so, however. Rather, in direct contravention of his agreements with plaintiff, Anderson borrowed from defendants $35,000 and $75,000, or a total of $105,000, executing trust deeds securing these loans. Having received copies of the escrow instructions, defendants knew Anderson was authorized to borrow only a total of $78,000. Yet, in total disregard of the escrow instructions and of the impact their actions would have on plaintiff's security, defendants loaned Anderson a total of $105,000. The $27,000 differential "substantially increased the hazards which would be faced by plaintiff[] upon [Anderson's] default." (*Ruth* v. *Lytton Sav. & Loan Assn.* (1968) 266 Cal.App.2d 831, 842 [72 Cal.Rptr. 521].)

Plaintiff's decision to subordinate her liens was conditioned upon Anderson securing loans which did not exceed the limitations set forth in the

escrow instructions. Stated another way, the priority of defendants' liens was contingent upon their compliance with the terms of Anderson's agreement with plaintiff. Inasmuch as the Borens loaned Anderson more money than he was entitled to borrow under the escrow instructions, the conditions underlying defendants' right to priority were not met. Plaintiff's purchase money deeds therefore retained their priority. Plaintiff was entitled to the equitable relief she sought. (*Protective Equity Trust #83, Ltd.* v. *Bybee.* (1991) 2 Cal.App.4th 139, 151 [2 Cal.Rptr.2d 864]; *Middlebrook-Anderson Co.* v. *Southwest Sav. & Loan Assn., supra,* 18 Cal.App.3d 1023; *Ruth* v. *Lytton Sav. & Loan Assn., supra,* 266 Cal.App.2d 831; *In re Sunset Bay Associates* (9th Cir. 1991) 944 F.2d 1503, 1513.)

I would reverse.[1]

A petition for a rehearing was denied October 13, 1999. Spencer, P. J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied January 13, 2000. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.

---

[1]Although the propriety of the trial court's findings on plaintiff's fraud and conspiracy to defraud claims are not before this court, the facts of this case unquestionably disclose that plaintiff was defrauded of her property. In fact, the superior court file reflects that the bankruptcy stay eventually was lifted as to Anderson. Plaintiff proceeded to trial against him and prevailed. The trial court found that Anderson had defrauded plaintiff. The court awarded plaintiff $127,613.38 in damages, $116,620 for attorney's fees pursuant to Civil Code section 1717, and $6,648.25 in costs.

Particularly egregious and indicative of fraud is the fact that the dollar value of the points the Borens charged Anderson was included in the finance charges for the two loans. By charging such high points, the Borens effectively forced Anderson to borrow a larger amount than he otherwise would have had to borrow to obtain the proceeds needed to buy the properties. Although this resulted in a larger loan, it did not result in a commensurate increase in the amount of loan proceeds plaintiff received. The loans, as structured, shifted the risk of loss to plaintiff to the extent that it decreased her security.