Filed 6/14/22  G.M. v. Adams CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| G.M., a Minor,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FRED ADAMS, et al.,<br><br>    Defendants and Respondents. | B312798<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV46725) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark C. Kim, Judge.  Affirmed.

Nathaniel J. Friedman, Matthew E. Hess for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer, Deborah S. Taggart, and Jennifer K. Villebro for Defendants and Respondents.

————————————————————

A minor filed a complaint for wrongful life, alleging her mother's physician and his medical assistant failed to order an in utero test that would have revealed the minor's spina bifida, depriving her mother of the option to undergo an abortion.  The trial court granted the defendants' motion for summary judgment, finding no triable issue as to whether the test would have revealed the minor's condition.  We affirm.

## BACKGROUND

### A.    G.M.'s Gestation and Birth

On May 26, 2016, Mayra Soto, G.M.'s mother, visited Dr. Fred Adams for a routine gynecologic visit.  Soto reported she was 14 weeks pregnant.

Soto returned to see Dr. Adams on June 24, 2016.  Dr. Adams's examination findings were all within normal limits.

G.M. was born in November 2016.  An initial examination showed a dark vesicular lesion on her lower sacral area that was initially diagnosed as a capillary hemangioma, but ultimately diagnosed as an intrathecal lipoma with a spinal dysraphism (anomaly) consistent with a lipomyelomeningocele, a "closed" neural tube defect.

The lesion was removed on October 12, 2017.

### B.    Litigation

On December 30, 2019, G.M., by her guardian ad litem Jose Maya, filed a complaint against several defendants, including Dr. Adams and Jazmin Cruz, his medical assistant.[1]  After substantial law and motion practice, the first amended complaint is operative.

---

[1] On the day before oral argument G.M. moved to dismiss her appeal as to Cruz.  We grant the motion.

2

In it, G.M. states one cause of action for professional negligence–negligence per se, alleging that Adams "failed to properly screen (offer AFP testing per Title 17, CCR § 6527) and otherwise diagnose Mayra Soto'[s] fetus, i.e., diagnose her defective fetus, and to offer to said plaintiff, the option of abortion, [so that] said defendants were negligent per se."[2] "Thereafter," G.M. alleges, "plaintiff was born suffering from spina bifida."

## C.    Summary Judgment
### 1.    Motion

On February 18, 2021, Adams moved for summary judgment.

In support of the motions, pediatric neurosurgeon Michael Muhonen, M.D. declared that with a lipomyelomeningocele and tethered spinal cord such as G.M. suffered, the skin is closed over the lipomyelomeningocele, unlike with an open spina bifida.

Dr. Muhonen explained that alphafetoprotein, or AFP, is a plasma protein produced by the embryonic yolk sac and fetal liver, which passes through the placenta and into the mother's blood. AFP is elevated when there is an open neural tube defect, such as an open spina bifida lesion.

---

[2] "Title 17 of the California Code of Regulations, section 6527. . . requires clinicians who provide prenatal care to advise all pregnant women in their care of the availability of the alphafetoprotein (AFP) test, which screens for neural tube defects in the fetus." (*Galvez v. Frields* (2001) 88 Cal.App.4th 1410, 1413-1414.) Spina bifida is an example of a neural tube defect. (*Ibid.*)

Dr. Muhonen concluded that because lipomyelomeningocele is a closed lesion, it does not leak cerebral spinal fluid into the amniotic fluid, and thus would not produce a positive AFP test.

Dr. Muhonen also opined that an ultrasound at 17 to 18 weeks gestation would not have been diagnostic of G.M.'s condition; only an MRI of the fetus would have been, and there was no indication for an MRI. G.M. objected to this opinion as irrelevant.

### 2. Opposition

G.M. opposed the motions.

In support of the opposition, obstetrician and gynecologist Myra K. Levinson, M.D. declared that she disagreed with Dr. Muhonen's opinions as to causation, although she did not explain how she disagreed. Dr. Levinson did not discuss Dr. Muhonen's opinion that an AFP test would not have detected a closed neural defect, but stated an AFP test is a screening test, and "if it turns out to be positive," then the patient would be referred for additional testing and counseling, and if those tests also proved positive, then the patient would be offered pregnancy termination.

### 3. Reply

In reply, Adams objected that Dr. Levinson's declaration ignored Dr. Muhonen's opinion that an AFP test would not have been diagnostic of G.M.'s condition.

### 4. Ruling

At the hearing, the trial court observed that Dr. Levinson's causation opinions failed to address the defense expert's opinion that an AFP test would not have been positive for G.M.'s condition.

4

The trial court sustained objections to Dr. Levinson's causation opinion, and to plaintiff's counsel Mr. Friedman's declaration. The trial court found no triable issue existed as to causation, and granted summary judgment.

Judgments were entered, and G.M. timely appealed.

## DISCUSSION

G.M. contends summary judgment was improper because her evidence created a triable issue of material fact as to causation. We disagree.

### A. Legal Principles

#### 1. Negligence

The elements of a cause of action for medical professional negligence are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.) " 'Under the doctrine of negligence per se, the plaintiff "borrows" statutes to prove duty of care and standard of care. [Citation.] The plaintiff still has the burden of proving causation.' " (*David v. Hernandez* (2014) 226 Cal.App.4th 578, 584.)

"[T]he causation inquiry has two facets: whether the defendant's conduct was the 'cause in fact' of the injury; and, if so, whether as a matter of social policy the defendant should be held legally responsible for the injury." (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 252.) To determine causation in fact, California has adopted the substantial factor test set forth in the Restatement Second of

5

Torts, section 431. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052; Rest.2d. Torts, § 431 [negligent conduct is a legal cause of harm if it is a substantial factor in bringing about the harm].) An event will be considered a substantial factor in bringing about harm if it is "recognizable as having an appreciable effect in bringing it about." (Rest.2d Torts, § 433, com. (d).)

In a medical negligence case, " 'causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case.' " (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603.)

### 2. Summary Judgment

A trial court properly grants summary judgment " 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A defendant may establish its right to summary judgment by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to the cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 967.) "Once the moving defendant has satisfied its burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to each cause of action. [Citation.] A triable issue of material fact exists where 'the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*Ibid.*)

On appeal, we apply an independent standard of review to determine whether a trial is required—whether the evidence

6

favoring and opposing the summary judgment motion would support a reasonable trier of fact's determination in the plaintiff's favor on the cause of action or defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In doing so we view the evidence in the light most favorable to the party opposing summary judgment. (*Id.* at p. 843; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.) We accept as true the facts shown by the evidence offered in opposition to summary judgment and the reasonable inferences that can be drawn from them. (*Spitzer v. The Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1385-1386.) Although appellant filed objections to respondent's evidence in the trial court, appellant has not raised the issue of the trial court's ruling on objections in this appeal.

## B.    Application

Here, the declaration of Dr. Muhonen established to a reasonable degree of medical probability that the care Adams provided to Mayra Soto did not cause G.M.'s claimed injury. This is so, Muhonen opined, because the AFP test G.M. alleges should have been given would not have been diagnostic of G.M.'s lipomyelomeningocele with a tethered spinal cord.

This evidence shifted the burden to G.M. to show the existence of a triable issue of material fact as to causation.

She failed to do so. Dr. Levinson opined only that if an AFP test had been positive, Ms. Soto could have undergone further testing that might have revealed G.M.'s condition. But Dr. Levinson did not opine that to a reasonable degree of medical probability—or any degree of probability—that an AFP test would have been positive here. Dr. Levinson completely failed to address Dr. Muhonen's opinion that an AFP test cannot detect

7

closed neural lesions, and thus failed to rebut that opinion, a fact G.M. concedes in her reply.

Instead, G.M. argues for the first time on appeal that the trial court failed to consider a "second pre-natal test . . . i.e. an ultrasound," about which the medical experts here differed.  But she failed to allege that defendants should have performed an ultrasound, failed to argue in opposition to summary judgment that an ultrasound was indicated or would have been probative, and in fact objected that Dr. Muhonen's opinion concerning the effect of an ultrasound was irrelevant.

"[T]he pleadings determine the scope of relevant issues on a summary judgment motion."  (*Nieto v. Blue Shield of California Life & Health Ins. Co.* (2010) 181 Cal.App.4th 60, 74.)  A defendant is "entitled to rely on the scope of plaintiffs' operative pleading in seeking a summary disposition of the action." (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 509.)  And on appeal, a party may neither raise a new theory for the first time on appeal (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316) nor assert a new theory unsupported by any facts included in her separate statement of facts in opposition to summary judgment (*Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54).

G.M. argues that she preserved the ultrasound issue by referring in her separate statement, at undisputed material fact No. 1, to the Levinson declaration in its entirety, in which Levinson discusses the procedure.  We disagree.  Although a global reference to the entirety of the evidence preserves any issue regarding what evidence may be considered (the trial court is already obligated by Code of Civil Procedure section 473c,

8

subdivision (c), to consider all evidence), that reference does nothing to identify G.M.'s new theory.  Although the trial court must consider all evidence on summary judgment, it has no duty or ability to discern from the evidence what theories of liability a party intends to pursue.

## DISPOSITION

The judgment is affirmed.  Respondents are to receive their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

MORI, J.*

---

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.