[No. C041611. Third Dist. Jan. 26, 2004.]

JRS PRODUCTS, INC., Plaintiff and Appellant, v.
MATSUSHITA ELECTRIC CORPORATION OF AMERICA, Defendant
and Appellant.

COUNSEL

Freidberg Law Corporation, Edward Freidberg and Stephanie J. Finelli for Plaintiff and Appellant.

Golenbock, Eiseman, Assor, Bell & Peskoe, Martin S. Hyman, Jeffrey T. Golenbock; Steefel, Levitt & Weiss, Daryl S. Landy and Aliya S. Gordon for Defendant and Appellant.

OPINION

RAYE, J.— ■ A franchisor that wrongfully terminates a franchise is liable to the franchisee for breach of contract, not for intentional interference with prospective economic advantage. In this case, the franchisee's first cause of action against the franchisor was, in fact, predicated on a breach of contract theory, but the trial court erroneously granted a summary adjudication of that claim. After we dismissed the franchisee's appeal on the contract claim as an appeal from a nonfinal judgment, the franchisee was compelled to try the case solely on a tort theory and prevailed. We reverse the ensuing judgment because, as the franchisor argues on appeal, its conduct, though wrongful, consisted exclusively of breaching the contract. ■ We also reverse the judgment dismissing the contract claim because, as the franchisee argues in the cross-appeal, the California Franchise Relations Act (Act; Bus.

& Prof. Code, § 20000 et seq.)[1] does not bar a franchisee from recovering damages for breach of contract.

## FACTS

Plaintiff JRS Products, Inc. (JRS), objects to defendant Panasonic's concise summary of the facts, insisting that a detailed chronology of Panasonic's wrongdoing is essential to resolution of its appeal.[2] We disagree. Panasonic reiterates the significant concession it made at trial that its termination of the contract was wrongful under franchise and unfair competition law. In the context of Panasonic's concession and the issues we must resolve on appeal, the relevant facts can be briefly stated.

JRS became a copier dealer for Panasonic in 1989 and a fax machine dealer in 1991. The dealer contract gave Panasonic the right to terminate the agreement without cause with 90 days' notice and to compete with its dealers. In 1996 JRS sold the copier business and became a "dedicated" fax machine dealer, meaning it sold only a Panafax line of products. Doing business under the name XEL Imaging Systems, JRS sold fax machines to numerous business customers, including the State of California and Intel Corporation. Panasonic's western region sales manager for facsimile, Henry "Ski" Shekoski, provided JRS a boilerplate letter stating JRS was an authorized Panasonic dealer.

In November 1997 JRS began to market remanufactured original Panasonic toner cartridges and to sell them at lower prices than Panasonic charged for its new toner cartridges. Unbeknownst to Panasonic, JRS included a copy of the 1996 authorization letter as part of its solicitation package to potential customers. There was evidence to suggest that Shekoski and others concealed from JRS that JRS would be terminated if it did not stop using the authorization letter. Jack Scarzella, the chief executive officer of JRS, testified that Shekoski asked him to stop using the letter in a telephone conversation, but he did not tell him he would be terminated if he continued to use the letter. Shekoski prepared, but did not send, a letter warning JRS that continued misuse of the authorization letter could result in termination of the dealership. Scarzella testified that if he had been told the dealership would be terminated for misuse of the letter, he would have stopped using it.

---

[1] All further statutory references are to the Business and Professions Code unless otherwise indicated.

[2] JRS filed its complaint against Panasonic Office Products Company Division of Panasonic Communications & Systems Company, a unit of Matsushita Electric Corporation of America; and Ski Shekoski (the western region Panafax manager for Panasonic). Consistent with the parties' briefs, we refer to defendants collectively as Panasonic, although judgment was entered against Matsushita Electric Corporation of America.

Panasonic executives were very concerned that remanufacturing was cutting into profits and adversely impacting business. There was evidence that Panasonic decided to terminate dealers who were recharging and selling Panasonic cartridges. In December 1997 Panasonic management made the decision to terminate JRS. However, according to JRS, to obtain approval of the termination, these managers concealed from higher-ranking Panasonic executives that JRS had not been given a written warning.

Panasonic also sold directly to customers under its national account program (NAP). Panasonic believed its dealers were undermining the program by soliciting sales from NAP customers. In March 1998 Panasonic sent a memo to all fax dealers threatening to terminate their dealerships if they solicited sales from NAP customers. Scarzella believed his Intel account was a prospective NAP account and therefore the memo was directed at him. His suspicion was confirmed, from his point of view, when Shekoski asked Scarzella for information about Intel's sales. Shekoski also attempted to get information about Intel from an out-of-state dealer.

On April 1, 1998, JRS received a letter from Panasonic terminating the dealership in 90 days. The notice did not give a reason for the termination. The internal termination sheet stated "inactivity & conflict of business" as the reason for termination. It also stated, "They are recharging Panasonic toner cartridges and selling them to Panasonic dealers incorporating a letter to solicit business that includes the Panasonic logo. Written efforts were made to resolve the issue but the customer did not cease." Efforts to persuade Panasonic to reinstate the dealership proved unsuccessful.

## LITIGATION FACTS

JRS's first amended complaint alleges eight causes of action, including a cause of action for breach of contract by wrongfully terminating the dealership agreement and a cause of action for the tort of interference with prospective economic advantage. The trial court overruled Panasonic's demurrers to these two causes of action. The court granted, however, Panasonic's subsequent motion for summary adjudication of all but the eighth cause of action for interference with prospective economic advantage.

The parties agreed that JRS would dismiss its eighth cause of action without prejudice to allow JRS to appeal the rulings as to the other causes of action. JRS appealed. After the case was briefed, we dismissed the appeal on our own motion as an appeal from a nonfinal judgment.

JRS's motion to reinstate the appeal was prophetic.[3] JRS urged us to reinstate the appeal because "[o]rdinarily, a party to a contract . . . cannot be liable under the tort of intentional interference with its own relationship[.]" JRS clearly articulated the very issue we now must decide: "Can a company be held liable for tortious interference because it failed to perform its contract, knowing that the other party to the contract has contractual obligations to third parties?" JRS cited the dispositive authorities and warned that failure to reinstate the appeal could result in a trial on the wrong theory. And so it was. We denied the motion and the case was tried as a tort rather than a contract action.

The trial court denied Panasonic's motion for a nonsuit on the interference claim. The jury awarded JRS compensatory damages of $720,620 and punitive damages of $2,500,000. Panasonic appeals the judgment on the tort claim; JRS cross-appeals the dismissal of the contract claim. Both appeals have merit. We reverse.

## DISCUSSION

### I

The cross-appeal raises the threshold issue whether a franchisee is entitled to contract damages for wrongful termination of a franchise agreement. The trial court granted summary adjudication of the cause of action for breach of contract because "[t]he remedy plaintiff seeks in the first amended complaint—reinstatement as a Panasonic dealer—is not available under the Franchise Relations Act." JRS, however, sought contract damages, as well as reinstatement, for wrongful termination of the franchise. Panasonic insists the ruling is correct because JRS cannot recover damages for breach of the franchise agreement as a matter of law. We review the ruling de novo. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].)

■ The Act prohibits a franchisor from terminating a franchise without good cause and requires the franchisor to give a franchisee notice to cure any transgressions. (§ 20020.) On appeal, Panasonic does not assert that it had good cause or that it gave JRS adequate notice; in fact, it concedes the termination was wrongful under the Act and under the unfair competition law. Rather, it contends that the repurchase of inventory is the exclusive remedy for wrongful termination of a franchise pursuant to section 20035. We disagree. Panasonic's argument disregards both the letter and the spirit of the law.

---

[3] We grant JRS's request to take judicial notice of its motion for reinstatement of the appeal filed in this court on February 21, 2001.

 Section 20035 does, as Panasonic suggests, compel a franchisor to repurchase the franchisee's inventory if it terminates the franchise or fails to renew the franchise agreement. Section 20035 provides: "In the event a franchisor terminates or fails to renew a franchise other than in accordance with the provisions of this chapter, the franchisor shall offer to repurchase from the franchisee the franchisee's resalable current inventory meeting the franchisor's present standards that is required by the franchise agreement . . . ." There is nothing in this provision, however, or in any other part of the Act to indicate that this remedy is exclusive. It is not.

Section 20037 plainly states: "Except as expressly provided herein, nothing in this article shall abrogate the right of a franchisee to sue under any other law." This statute provides that a franchisee may seek any common law or statutory remedy for wrongful termination of the franchise, including a breach of contract action. By expressly affording franchisees the right to pursue their remedies under any other law, the Legislature did not restrict a franchisee's remedy to reimbursement for inventory, as Panasonic insists. Section 20037 expressly qualifies the applicability of section 20035. If the Legislature had intended for section 20035 to provide the exclusive measure of damages, it certainly would not have qualified the section with the wholesale availability of remedies accorded by section 20037. Interpreting section 20035 to provide the sole remedy for a wrongful termination, as Panasonic insists we must do, would render section 20037 a nullity.

Because the language of section 20037 is plain, we need not consider the legislative history of the Act.[4] (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54].) Moreover, our interpretation is consistent with the purpose of the Act to protect franchisees. The Legislature could not possibly have intended to allow franchisors to wrongfully terminate franchises simply if the franchisors are willing to repurchase inventory and at the same time divest franchisees of their common law remedies. If repurchase of inventory is construed as an exclusive remedy, franchisors would have no incentive to refrain from wrongfully terminating franchises and taking over the businesses with the very inventory they need to continue the franchisee's business. We cannot accept such an absurd result in the face of legislation designed to expand, not retract, a franchisee's remedies.

Two federal cases gave rise to the mischief here. Panasonic urges us to adopt the reasoning of *Boat & Motor Mart v. Sea Ray Boats, Inc.* (9th Cir. 1987) 825 F.2d 1285 (*Sea Ray*). *Sea Ray* was thereafter cited in dicta in *Dale*

---

[4] We therefore deny JRS's request to take judicial notice of the legislative history of the Act.

*Carnegie & Associates, Inc. v. King* (S.D.N.Y. 1998) 31 F.Supp.2d 359, 365. Neither case persuades us that the Act limits JRS's recovery to a repurchase of its inventory.

In *Sea Ray*, the franchise agreement allowed the franchisor to terminate the franchise with 30 days' written notice and expressly waived liability for any losses arising out of the agreement. (*Sea Ray, supra,* 825 F.2d at p. 1288.) The Act, however, provides that a franchisor, exercising its right not to renew a franchise agreement, must give 180 days' notice. (§ 20025.) The franchisor violated this provision of the Act. (*Sea Ray, supra,* 825 F.2d at p. 1290.) The dispositive issue was whether the franchisee had a statutory right to damages under the Act because it had waived its common law right to damages under the contract. The efficacy of the waiver, therefore, turned on whether the Act *created* a *statutory* right to damages.

The Ninth Circuit Court of Appeals held that the Act did not create an independent basis for damages. (*Sea Ray, supra,* 825 F.2d at p. 1291.) The court observed that, although both the Franchise Investment Act and the Franchises Act, dealing with franchises to sell gasoline, expressly provided injured franchisees a right of action for damages, the Act did not accord franchisees a similar remedy. (*Ibid.*) Rather, the only remedy provided by the Act was the repurchase of inventory. The court concluded, "[T]he Act itself provides no remedy in our case except repurchase." (*Ibid.*)

The court considered whether the franchisee had a right to damages "under any other law." (§ 20037; *Sea Ray, supra,* 825 F.2d at p. 1291.) It did not. The court held that the only unlawful provision in the franchise agreement was the termination clause. The franchisee therefore had no basis for recovery of damages. Its waiver of damages was valid because the Act did not create a statutory right to damages and the agreement itself precluded the recovery of damages for a common law breach of contract action as authorized by section 20037. (*Sea Ray, supra,* 825 F.2d at p. 1291.)

Thus, Business and Professions Code section 20037 did not help the *Sea Ray* franchisee because, unlike JRS, it had no common law action for breach of contract. JRS did not waive its right to damages for Panasonic's breach. Nor is it relying on any statutory right to damages under the Act separate and apart from the contract damages to which it is entitled under Civil Code section 3300. JRS did not limit its claim for damages to those authorized under the Act; it sued for breach of contract and specifically sought common law contract damages.

Panasonic insists that *Sea Ray* precludes JRS's recovery of contract damages because it sued for wrongful termination of the franchise under the

Act. But Panasonic ignores the key factual distinction between *Sea Ray* and its franchise agreement. In *Sea Ray*, the parties lawfully waived their common law right to damages. Consequently, the franchisee had no contractual right to damages and the Act did not provide statutory damages. Here, the parties could not lawfully waive what the Act compelled—good cause to terminate the franchise. Therefore, the provision allowing Panasonic to terminate without good cause is void because it contravenes the express terms of the Act. The fact that one provision of the agreement is void as a matter of law under the Act does not mean, as Panasonic argues, that the cause of action for breach of contract is brought under the Act and limited to a recovery for inventory.

*Coast Plaza Doctors Hospital v. UHP Healthcare* (2002) 105 Cal.App.4th 693 [129 Cal.Rptr.2d 650] (*Coast Plaza*) provides an apt analogy. In *Coast Plaza*, a health care provider attempted to recover the cost of medical services from the insurer of many of its patients. The provider did not have a written agreement with the insurer. It alleged multiple causes of action for breach of contract under the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act) (Health & Saf. Code, § 1340 et seq.), breach of contract as a third party beneficiary or assignee, open book account, quantum meruit, unfair competition, unjust enrichment, and violation of the Knox-Keene Act. The trial court ruled that the Department of Corporations has exclusive jurisdiction to enforce the Knox-Keene Act. (*Coast Plaza, supra*, 105 Cal.App.4th at pp. 697–699.) The Court of Appeal reversed, concluding the Department of Corporations does not have exclusive jurisdiction and the provider has a right to pursue common law and other statutory causes of action. (*Id.* at p. 707.)

The court explained: "Not every cause of action is based on the Knox-Keene Act. As to the cause of action for violation of Business and Professions Code section 17200, which is, at least in part, based on violations of [the] Knox-Keene Act, . . . that conduct . . . may be the basis for a cause of action under Business and Professions Code section 17200." (*Coast Plaza, supra*, 105 Cal.App.4th at p. 706.) The Knox-Keene Act, like the Act, itself contemplates recovery based on other law. Section 1371.25 of the Health and Safety Code, reminiscent of Business and Professions Code section 20037, expressly provides, in part: "Nothing in this section shall preclude a finding of liability on the part of a plan, any entity contracting with a plan, or a provider, based on the doctrines of equitable indemnity, comparative negligence, contribution, or other statutory or common law bases for liability."[5] (*Coast Plaza, supra*, 105 Cal.App.4th at p. 706.)

[5] Health and Safety Code section 1371.25 expressly voids any contractual provision at odds with its terms. It states: "A plan, any entity contracting with a plan, and providers are each responsible for their own acts or omissions, and are not liable for the acts or omissions of, or the costs of defending, others. Any provision to the contrary in a contract with providers is

Nevertheless, the insurer, like the franchisor here, argued that the Knox-Keene Act offered the exclusive remedy to an aggrieved provider. Rejecting the insurer's suggestion to defer to the Department of Managed Health Care under the Knox-Keene Act, the court allowed the provider to pursue its common law remedies based on the clear statutory language of Health and Safety Code section 1371.25.

The provider in essence imported part of one cause of action, an alleged violation of the Knox-Keene Act, to state another cause of action for unfair competition. Thus, violation of the Knox-Keene Act itself could become the basis for an unfair competition claim. Similarly, the violation of the Act became the basis of JRS's common law breach of contract claim. The remedies available to JRS based on the common law breach of contract are independent of the additional remedy provided by the Act.

Nor do the pleadings limit JRS to a claim exclusively under the Act. Count One is entitled "For Damages and Specific Performance for Breach of Contract for Termination of the Franchise Dealer Contract without 'Good Cause.'" In paragraph 27 of the first amended complaint, JRS alleges that portions of the contract "are void as being in violation of California law and public policy pursuant to Civil Code §§ 1667, 1668 and 3513, the Franchise Relations Act (Business & Professions Code § 20020 et seq.) and the Franchise Investment Law (Corporations Code § 31512). Pursuant to Civil Code §§ 1667 and 1668, all contractual provisions which have for their object, directly or indirectly, to exempt anyone from obeying the laws of California are unlawful and void. Pursuant to Civil Code § 3513, attempts to waive laws established for a public reason are void."

In paragraph 40, JRS further alleges: "As a result of the wrongful termination of the franchise dealership without cause, JRS Products has suffered damages under Civil Code §§ 3274, 3282, 3283 and 3300, in that JRS cannot continue to service the ongoing product needs of its customers, with loss of the ongoing profits from said business, and JRS will lose its substantial capital and personal investment built up over the years."

Hence, JRS did not merely state a cause of action under the Act. It stated a cause of action for breach of contract seeking damages under the common

---

void and unenforceable." While the Act does not expressly render contracts that include provisions in violation of the Act void and unenforceable, the result is the same. The court in *Sea Ray* acknowledged that a contract clause could not stand if it violated the Act. (*Sea Ray, supra*, 825 F.2d at p. 1290.) Panasonic's clause purportedly allowing it to terminate a franchise without cause is void and unenforceable because it is in clear violation of Business and Professions Code section 20020.

law. The fact that the Act renders a provision in the agreement void as a matter of law, as JRS plainly alleged in the amended complaint, does not convert a common law claim into a statutory claim. To accept Panasonic's argument would be to abolish any breach of contract claim predicated on a contractual provision that is unlawful under a law that does not provide damages as a remedy. That is clearly not the law. We therefore conclude that JRS can pursue its breach of contract claim against Panasonic for wrongful termination of the franchise agreement contrary to the court's ruling on summary adjudication.

## II

JRS's justifiable frustration seeps through the briefing. Indeed it foresaw, and tried mightily to prevent, a trial on the wrong theory. It resisted Panasonic's demurrer and motion for summary adjudication. It articulated the problem and formulated the dispositive issue in its motion to reinstate the appeal that we dismissed on our own motion. It understood, as it represented to us, that a party to a contract cannot generally sue for the tort of intentional interference with economic advantage. Not surprisingly, JRS is now in the unenviable position of trying to preserve a handsome jury verdict including punitive damages after a long and arduous trial. In that context, JRS makes a valiant effort to convince us that Panasonic waived its challenge to the tort claim. But Panasonic is not to blame for judicial error. We can find no waiver.

JRS cites to an impressive assemblage of authority on waiver. (See, e.g., *Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1166–1167 [112 Cal.Rptr.2d 540]; *Mesecher v. County of San Diego* (1992) 9 Cal.App.4th 1677, 1685–1687 [12 Cal.Rptr.2d 279] *(Mesecher)*; *Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1316 [88 Cal.Rptr.2d 758] *(Brown)*; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [60 Cal.Rptr.2d 780]; *Robinson v. Grossman* (1997) 57 Cal.App.4th 634, 648–649 [67 Cal.Rptr.2d 380].) As these cases make clear, fairness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. (*Brown, supra,* 74 Cal.App.4th at p. 1316.) In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. (*Mesecher, supra,* 9 Cal.App.4th at p. 1686.) Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.

None of these fundamental concerns, however, are relevant here. Panasonic challenged the efficacy of the tort claim in its demurrer to the first amended

complaint. In that demurrer, Panasonic argued that the interference claim was defective as a matter of law because it contained no allegation that Panasonic's alleged interference was tortious separate and apart from the alleged breach of the JRS dealer agreement. While Panasonic's demurrer to the eighth cause of action may not have been as specific as its argument on appeal, the viability of a tort claim is a question of law that could have been raised for the first time on appeal. (*Ward v. Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) In any event, a Court of Appeal is at liberty to reject a waiver claim and consider the issue on the merits. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 167 [143 Cal.Rptr. 633].)

JRS attributes an assortment of nefarious motives to Panasonic for failing to raise the issue again. We will not speculate about Panasonic's litigation strategy. Certainly, the dubious viability of the tort claim was not hidden from the court or from JRS. It is indeed ironic that it was JRS that tried repeatedly to salvage its breach of contract claim so as not to try the case on the wrong theory. Although its efforts failed, the record discloses there was no waiver. Because the parties were aware of the issue and the appeal involves important questions of public concern regarding the Act, we will exercise our discretion to decide Panasonic's appeal on the merits.

### III

■ The parties are at odds over the characterization of the dispositive issue on appeal. The issue is not, as JRS suggests, whether there is substantial evidence to support the jury's finding that Panasonic intentionally interfered with its prospective economic relationships with its customers. There is abundant evidence to support each of the elements of the tort. We are confronted with a question of law, not the sufficiency of the facts. But the issue is not, as Panasonic asserts, whether a tort claim for interference can be sustained in the absence of evidence that the tortfeasor *directed* its actions toward a third party. The target of the interference is not an element of the tort. Rather, the issue is whether damages can be recovered for interference with prospective economic advantage by one contracting party against another based on conduct that would otherwise constitute a breach of the parties' contract. The effect of the judgment is to award JRS, a party to a contract, tort damages for Panasonic's breach of contract on the theory that Panasonic's breach constitutes an interference with prospective economic advantage. As JRS pointed out much earlier in this litigation, a party to a contract cannot recover damages in tort for breach of contract. We therefore reverse the judgment on the tort claim.

The jury was properly instructed on the elements of the tort of intentional interference with prospective economic advantage as follows: "One, an

economic relationship existed between the plaintiff and its Panasonic Product customers, containing a probable future economic benefit or advantage to the plaintiff; [¶] Two, the defendant knew of the existence of that relationship; [¶] Three, the defendant intentionally engaged in wrongful conduct designed to interfere with or disrupt this relationship; [¶] Four, the economic relationship was actually interfered with or disrupted; [¶] And five, the wrongful conduct of the defendant which was designed to interfere with or disrupt this relationship caused damage to the plaintiff." (BAJI No. 7.82; *Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 521–522 [49 Cal.Rptr.2d 793].) As to the third element, the defendant must engage in an act that is wrongful apart from the interference itself. (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376 [45 Cal.Rptr.2d 436, 902 P.2d 740] (*Della Penna*).) The plaintiff need not prove, however, that "the defendant engaged in wrongful acts *with the specific intent* of interfering with the plaintiff's business expectancy." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1154 [131 Cal.Rptr.2d 29, 63 P.3d 937] (*Korea Supply*).) Alternatively, to satisfy the intent requirement of the third element, the plaintiff can prove that "the defendant knew that the interference was certain or substantially certain to occur as a result of its action." (*Id.* at p. 1154.)

At trial, Panasonic conceded all but the third element of the tort, a concession it reiterates for purposes of this appeal. As to the third element, however, Panasonic insists that the wrongful conduct must be "directed at" a third party, not a party to the contract. Panasonic cites to *Della Penna* as authority for its understanding of the third element. We agree with JRS that *Della Penna* does not expand the third element to encompass the target of the conduct as an element of the tort. If Panasonic's "directed at" language is meant to suggest a requirement of specific intent to disrupt the business relationship, then the Supreme Court's recent decision in *Korea Supply* clarifies that specific intent is not an element of the tort. If, on the other hand, Panasonic is attempting to apply the basic principle that a party to a contract is not entitled to tort damages for breach of contract to convince us that JRS did not prove one of the elements of the tort, we need not distort the elements of intentional interference to reach the fundamental issue as to whether JRS can recover in tort for breach of contract. That issue requires careful analysis of the law and of the record.

In *Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612 [17 Cal.Rptr.2d 708] (*Khoury*), a beauty shop filed a complaint against a distributor of hair products for, among various other causes of action, breach of contract and for the intentional interference with advantageous business relationships. The trial court sustained the distributor's demurrer without leave to amend. (*Id.* at p. 615.) The Court of Appeal reversed the demurrer as to the contract cause of action but otherwise affirmed the judgment. (*Id.*

at pp. 619–620.) The court explained: "The sole alleged conduct of respondent was the breach of contract to supply the JPM products to appellant. The effect on appellant's customers (with whom respondent had no relations) and the damage to appellant's business were simply consequences of breach of contract. . . . Appellant's third cause of action is simply duplicative of his contract claim." (*Id.* at p. 618.)

In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503 [28 Cal.Rptr.2d 475, 869 P.2d 454] (*Applied Equipment*), the California Supreme Court held there is no tort action for interference against a party to the contract. The court wrote: "[C]onsistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with contract does not lie against a party to the contract." (*Id.* at p. 514.) The court rejected the notion that a party to a contract could tortiously conspire with another to breach the contract. Explaining the difference between contract and tort in greater depth, the court stated: "Applied's conspiracy theory is fundamentally irreconcilable with the law of conspiracy and the tort of interference . . . . One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." (*Ibid.*)

*Applied Equipment* involved an interference with contract, a sibling of the tort of interference with a prospective economic advantage. In *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242 [45 Cal.Rptr.2d 90] (*Kasparian*), the Court of Appeal applied the same logic "where there is no contractual but only a *prospective* relationship. . . . In short, nothing said by the court in *Applied Equipment* requires or even suggests that the 'injured' plaintiff should be given a tort remedy to 'replace' the contract remedy he would not have been entitled to in any event." (*Id.* at p. 266.)

Thus, our job is to determine whether the essence of the claim is fundamentally based on conduct that sounds in contract or in tort. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464 [54 Cal.Rptr.2d 888] (*Arntz*) provides a fitting example. A general contractor filed a broadly based complaint against a surety for terminating their bonding relationship. The court pointed out that the contractor's grievance was "a mosaic of varied pieces of discord." (*Id.* at p. 478.) "But, fundamentally, [the contractor] complains that [the surety] terminated the parties' bonding relationship without good cause. Such a complaint sounds in contract, not tort. A contracting party's unjustified failure or refusal to

perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business." (*Id.* at p. 479.)

JRS contends that these cases, as well as the out-of-state authority offered by Panasonic (*Hein v. Chrysler Corp.* (1954) 45 Wn.2d 586 [277 P.2d 708]; *Tractor and Farm Supply, Inc. v. Ford New Holland, Inc.* (W.D.Ky. 1995) 898 F.Supp. 1198), do not apply because none of them involved the breach of an independent statutory duty. In other words, according to JRS, because Panasonic violated the franchise law and engaged in unfair competition, its termination of the franchise was wrongful apart from being a breach of contract. The cases cited by Panasonic, JRS continues, are inapposite because the only wrong arose from breach of contract. Based on this purported distinction, JRS would have us focus on duty rather than on conduct. Although superficially seductive, if accepted, the argument would convert any wrongful termination of a franchise agreement into a tort claim.

■ JRS cites no authority to support its novel proposition that the breach of a franchise agreement exposes a franchisor to tort liability based on its "independent duty" to adhere to its "social obligation not to violate franchise laws or engage in unfair competition." Although JRS would have us expand tort liability to allow for a tortious breach of contract as long as the breach violates a statute, it fails to consider the dangers implicit in such a radical departure from well-established limits to commercial recovery. "Because ours is a culture firmly wedded to the social rewards of commercial contests, the law usually takes care to draw lines of legal liability in a way that maximizes areas of competition free of legal penalties." (*Della Penna, supra,* 11 Cal.4th at p. 392.) Thus motive, regardless of how malevolent, remains irrelevant to a breach of contract claim and does not convert a contract action into a tort claim exposing the breaching party to liability for punitive damages. (*Arntz, supra,* 47 Cal.App.4th at p. 477.)

■ As *Khoury* and *Arntz* make clear, the essential nature of the conduct determines whether the action sounds in contract or in tort. In both cases, the alleged wrongful conduct constituted the breach of contract. It was the analysis of the conduct, not the duty, that gave rise to the appropriate cause of action. Similarly, we have scrutinized the record and the briefs to identify what conduct JRS alleged gave rise to its tort claim.

In the first amended complaint, JRS's second count alleges: "Defendant Panasonic has breached its duties owed to plaintiff JRS Products by terminating the franchise relationship without good cause. Plaintiff is informed and believes that Panasonic's purpose for terminating the franchise relationship was wrongful, in order to reduce competition for accounts which it wishes to

pursue as 'National Accounts' and to injur[e] plaintiff JRS as a competitor of remanufactured cartridges."

The trial echoed the same theme. The conduct was the termination; it was wrongful because it was done without good cause and to reduce competition. Thus JRS's lawyer argued to the jury that the case was about Panasonic's termination of JRS, which JRS contended violated the Act, was anticompetitive, and was effected without good cause.

And JRS reiterates the nature of the wrongful conduct on appeal. JRS argues that "Panasonic had violated franchise laws by terminating JRS without good cause, then attempted to fabricate 'good cause' through misrepresentations and concealments." "Evidence was also substantial that Panasonic engaged in unfair competition. Panasonic had clearly terminated JRS for remanufacturing toner cartridges. . . . The evidence was overwhelming that Panasonic terminated JRS in order to put JRS out of business and rid themselves of a competitor. [Citation.] Moreover, Panasonic has conceded that it terminated JRS for being a competitor and in order to take JRS's best customers."

■ Like the general contractor in *Arntz*, JRS assails Panasonic for a multitude of sins. But fundamentally, as in *Arntz*, JRS complains that Panasonic terminated the contract without good cause. This complaint sounds in contract, not tort. JRS introduced voluminous evidence at trial to prove how and why the termination was wrongful. But that evidence, voluminous as it may have been, did not change the essential nature of the claim. The termination itself may have been wrongful for any number of reasons, but it remained essentially a breach of contract. Thus, the basis for JRS's claim at trial that Panasonic violated the Act and engaged in anticompetitive conduct is the *very same activity* that gave rise to the claim of intentional interference—Panasonic's termination of the JRS dealer agreement. We agree with Panasonic that, wrongful or not, the termination is not "independent" of Panasonic's interference with JRS's interest. As the court concluded in *Arntz*, a breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business.

Since we have concluded that JRS's remedy for the wrongful termination of its franchise is limited to contract damages, we must reverse the compensatory and punitive damage awards.

## DISPOSITION

The judgments are reversed and the case is remanded to the trial court for litigation of the breach of contract claim. Both sides must bear costs on appeal.

Davis, Acting P. J., and Nicholson, J., concurred.

Petitions for a rehearing were denied February 25, 2004 and the opinion was modified to read as printed above. The petition of appellant Matsushita Electric Corporation of America for review by the Supreme Court was denied May 12, 2004.