Filed 5/15/25  Ibarra Professional Law Corp. v. Gu CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| IBARRA PROFESSIONAL LAW CORPORATION,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>PAULO ZHUO HENG GU,<br><br>  Defendant and Appellant. | A170743, A170858<br><br>(City & County of San Francisco Super. Ct. No. CGC17561980) |

Ibarra Professional Law Corporation (firm) sued its former client, Paulo Zhuo Heng Gu, to recover attorney fees he owed under five retainer agreements.  After a trial, the court found Gu breached the agreements and awarded the firm damages, interest on past due sums, and prevailing party attorney fees and costs.  Gu appeals.  We affirm.

**BACKGROUND**

In October 2017, the firm sued Gu, alleging he breached five retainer agreements by failing to pay attorney fees.  The firm sought $94,262.78 in compensatory and general damages and attorney fees and costs.

In March 2017, Gu sought the firm's assistance in seeking asylum. After meeting with Crisostomo Ibarra — the firm's principal attorney — Gu signed a retainer agreement for "asylum defense."  He agreed to pay hourly fees for the firm's services, costs and expenses related to the representation, and 10 percent annual interest on all amounts 30 days past due.  The parties

1

also agreed the prevailing party could recover reasonable attorney fees and costs for any action to enforce payment. In April 2017, the firm prepared an asylum application and submitted it to the immigration court. Meanwhile, immigration authorities detained Gu after he was arrested for threats, battery, and violation of a domestic violence restraining order.

When Ibarra visited Gu at the detention center, Gu asked for representation on four other matters — corporate consulting, criminal defense, marriage dissolution, and a petition to establish paternity. The firm drafted four retainer agreements. Gener Benitez — an attorney at the firm — returned to the detention center and watched Gu sign the agreements. The agreements were for "[c]orporate and [i]nternational consulting," "[c]riminal defense of alleged assault," defense and pursuit of a civil restraining order, dissolution of marriage and child custody, and a petition to establish parentage. All included hourly rates for services, Gu's responsibility for costs, 10 percent interest on bills 30 days past due, and a prevailing party attorney fee and costs provision in an action to enforce payment.

The firm worked pursuant to the agreements. For example, in addition to pursuing asylum, the firm litigated venue and Gu's potential release on bond. It also prepared a writ of habeas corpus after immigration authorities did not respond to the firm's attempts to locate Gu. Eventually, Gu secured asylum. Gu also told Ibarra he owned a newspaper company in Hong Kong, mining companies in Malaysia, and that he wanted to move assets from Hong Kong and China to the United States. Ibarra travelled to Hong Kong and met with attorneys on Gu's behalf. The criminal domestic violence case was dismissed. In June 2017, after issuing invoices, the firm learned Gu wanted it to stop working. He left sums unpaid.

At trial, the firm sought attorney fees: $6,499 for the criminal matter, $7,913 for the paternity action, $37,236 for corporate consulting, $9,044 for the restraining orders, and $30,377 for immigration work. In addition to the retainer agreements, the firm presented its billing statements and four documents "described as authorizing Gu's representation" (work authorizations) that were separate and distinct from the retainer agreements. Ibarra and Benitez also described some of their work and meetings with Gu, and Benitez testified Gu signed the nonimmigration retainer agreements in front of him at the detention center. Gu testified he only signed the immigration agreement, the other agreements were forgeries, and he never met with Benitez while detained. He claimed he only met with the firm — and only Ibarra — once for three to five minutes. He also denied requesting corporate representation from Ibarra or retaining the firm for his criminal case, but he admitted Ibarra worked on the criminal matter and secured a dismissal. Gu also testified the firm did not work on the immigration matter and it never prepared an asylum application, but he acknowledged he met with doctors for asylum purposes because of the firm, paid it $5,000 for asylum services, and agreed he secured asylum. Gu had no documents to support his case.

The trial court found Gu signed the five retainer agreements and breached them. It did not find Gu credible, noting multiple contradictions and unsubstantiated claims in his testimony. It did find Gu's signatures on the work authorizations to be "highly suspicious" and doubted their authenticity, but it noted those documents were not the retainer agreements the suit was premised on.

The trial court did, however, reduce the firm's damages award. It reviewed its bills for reasonableness and found "nothing of any value appears

3

to have been provided to the client" for its corporate counseling. It thus reduced the firm's consulting award to $3,701. After making other reductions, the court awarded $6,499 for criminal work, $7,913 for the paternity action, $9,044 for pursuing and defending restraining orders, and $30,264 for immigration services. In total, the court found Gu owed the firm $57,421 in unpaid fees.

The trial court requested supplemental briefing on any interest that might be owed under the agreements. After receiving briefing, the court awarded interest on past due amounts beginning the day the firm filed its complaint. The firm thereafter moved for prevailing party attorney fees and filed a memorandum of costs.[1] Gu did not oppose the motion or move to tax costs, and the court awarded $49,970 in attorney fees and $11,627.29 in costs.

In April 2024, the trial court issued its judgment. In all, the court ordered Gu to pay the firm $57,421 in principal for breaching the retainer agreements; $36,812.41 in interest accrued from October 18, 2017, to March 15, 2024, plus daily interest of $17.73 until judgment was entered; $11,627.29 in costs; and $49,970 in attorney fees.

## DISCUSSION

Gu argues the firm cannot recover damages for his breach of the retainer agreements for several reasons. Among them, he contends the firm breached its fiduciary duties and violated the California Rules of Professional Conduct — specifically rule 8.4(d) — by presenting the work authorizations. (All undesignated rule references are to these rules.) He also argues the firm cannot collect because it did not show it left copies of the agreements with Gu. These claims are forfeited.

---

[1] Lawyers who were not members or employees of the firm represented it below.

4

" 'As a general rule, theories not raised in the trial court cannot be asserted for the first time on appeal; appealing parties must adhere to the theory (or theories) on which their cases were tried.  This rule is based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal.' " (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.)  "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)  "[E]ach party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack." (*Ibid.*)  "Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier." (*Ibid.*)  Although exceptions exist for pure questions of law and matters of public policy, it is only appropriate to consider new issues on appeal if they present an uncontroverted record requiring no factual determinations.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417.)

The claims are forfeited because they raise issues of fact.  (*Sea & Sage Audubon Society, Inc. v. Planning Com., supra,* 34 Cal.3d at p. 417.)  Contrary to Gu's arguments, a breach of fiduciary duty is not a pure question of law.  (*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 890.)  And he premises his rule 8.4(d) argument on the "fact" that the firm "submitt[ed] false documents" — the work authorizations — and that Ibarra "falsely testif[ied] to their authenticity."  But the trial court never found the firm submitted false documents or that Ibarra knowingly testified falsely.  It found the signatures on them "highly suspicious" and expressed doubt about

5

their authenticity; but it did not find the firm forged the signatures or knew them to have been forged. The court did not resolve these factual issues because it noted the authorizations were not the retainer agreements that formed the basis of the complaint. It also never considered whether the firm left copies of the retainer agreements with Gu. Because these factual issues remain unresolved, we cannot consider these claims on appeal. (*Sea & Sage Audubon Society, Inc.*, at p. 417.)

Additionally, Gu argues the firm's consulting bill violated rule 1.5 because it was unconscionable, barring recovery under any of the retainer agreements. Not so. Under rule 1.5, the fee a client actually pays is relevant to whether the agreement is unconscionable. (*Shaffer v. Superior Court* (1995) 33 Cal.App.4th 993, 1002.) Here — after the trial court's reduction — Gu only has to pay $3,701 for corporate consulting. The court found the fee reasonable for the services provided, and Gu does not challenge that finding.

Next, Gu argues the firm could not recover under the consulting agreement because the agreement failed to sufficiently identify the firm's responsibilities under Business and Professions Code section 6148, subdivision (a)(3). Gu misunderstands the law. Although that statute states a contract for legal services shall contain the "responsibilities of the attorney," subdivision (c) states "the attorney shall . . . be entitled to collect a reasonable fee" if the agreement does not otherwise comply with the section's provisions. Here, assuming the description of responsibilities was insufficient, the trial court awarded a reasonable fee. (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 [prejudicial error must be affirmatively shown].)

Gu subsequently argues we should reverse the trial court's award of prevailing party attorney fees and order for costs and instead grant *him*

6

attorney fees and costs for the above reasons.  The argument is forfeited. (*JRS Products, Inc. v. Matsushita Electric Corp. of America*, *supra*, 115 Cal.App.4th at p. 178.)  Gu failed to oppose the firm's motion for prevailing party attorney fees or move to tax the firm's memorandum of costs below, much less raise this argument.  We decline to address it for the first time on appeal.

Finally, Gu argues the award for prejudgment interest should be reversed for the same reasons the firm may not recover under the retainer agreements.  Having already rejected those arguments, we do so again now. He also argues any prejudgment interest awarded because of the consulting agreement must reflect the $3,701 the trial court awarded for that work.  Gu has not demonstrated the court made any error in its interest calculation. (*Shaw v. County of Santa Cruz*, *supra*, 170 Cal.App.4th at p. 267.)  As best as we can tell, the court based its interest award on the proper amount of principal — $57,421.

## DISPOSITION

The judgment is affirmed.  The firm shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278 (a)(1)–(2).)

7

_____
RODRÍGUEZ, J.

WE CONCUR:


_____
TUCHER, P. J.


_____
PETROU, J.

A170743 & A170858; *Ibarra Prof. Law Corp. v. Gu*