Filed 12/19/23  Malik v. Carlson & Gevelinger CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| MUHAMMAD YOUNAS MALIK et al., | C096521 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2022-00315500-CU-NP-GDS) |
| v. | |
| CARLSON & GEVELINGER et al., | |
| Defendants and Respondents. | |

SUMMARY OF THE APPEAL

In this action, plaintiffs and appellants, spouses Muhammad Younas Malik (Malik) and Nazia Jabeen Iqbal (Nazia) filed a complaint alleging eight causes of action against defendants and respondents, attorney Jacqueline Gevelinger and the law firm Carlson & Gevelinger (referred to jointly as Gevelinger).

Preliminarily we note, because the facts in this case involve many members of the Iqbal family, we refer to the Iqbals by their first or middle names to avoid confusion.  We

1

refer to Malik and Nazia jointly as "the plaintiffs" and the two defendants as "Gevelinger."[1]

This action, filed by Nazia and Malik against Gevelinger, was brought after Gevelinger represented Nazia's siblings in various legal actions and petitions the siblings brought against either just Nazia or both Nazia and Malik.

As noted above, the complaint filed by Nazia and Malik alleges eight causes of action. The first four allege malicious prosecution. The fifth through seventh allege abuse of process. The eighth is styled as a fraud cause of action.

Gevelinger brought a motion to strike the entire complaint under Code of Civil Procedure section 425.16, California's anti-SLAPP (strategic lawsuit against public participation) statute. (See *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 912.) We refer to the motion as the anti-SLAPP motion. In the moving papers, Gevelinger argued all the causes of action arose from activities protected by the anti-SLAPP statute, raised global arguments that the entire action could not succeed, and made arguments as to why the specific types of causes of action would not succeed on the merits.

In their opposition, the plaintiffs responded to some, but not all, of Gevelinger's arguments. The plaintiffs conceded the first through fourth causes of action arose out of protected activities, said nothing about whether the fifth through eighth causes of action arose from protected activities, ignored one global merits argument, and did not address any of the merits arguments that were specifically made regarding the fifth through eighth causes of action.

---

[1] In drafting this opinion given the background that led to this action, we discovered using the term "the defendants" to refer to Gevelinger occasionally created confusing text. Finally, we considered using Malik's first name for consistency of treatment, but Malik's first name is Muhammad and both of Nazia's brothers' first names are Mohammad.

The trial court issued a tentative ruling granting the anti-SLAPP motion. When neither party requested oral argument, the trial court adopted its tentative ruling as its order on the motion.

Later, in a separate motion, the trial court awarded Gevelinger attorney's fees and costs.

On appeal, making many arguments they failed to make below, the plaintiffs argue the trial court erred in granting the anti-SLAPP motion. We will conclude that the plaintiffs forfeited critical arguments by failing to raise them below and affirm the decision of the trial court.

## FACTS AND HISTORY OF THE PROCEEDINGS

### Family Background Prior to 2019

The Iqbal family consisted of Zafar (father) and Kaneezan (mother), their children, two adult daughters, Nazia and Shazia, and two adult sons, Mohammad Moshan (Moshan) and Mohammad Ahsan (Ahsan).

In 2016 Kaneezan signed a power of attorney naming Zafar as her attorney-in-fact with Nazia as his successor. Also in 2016, Zafar signed a power of attorney that named Nazia as attorney-in-fact effective upon his incapacitation.

In January 2020, the Yolo County Superior Court found that Zafar had become incapacitated, and Nazia had become attorney-in-fact with powers of attorney over Zafar as of September 6, 2018. Kaneezan died in November 2018.

Prior to 2019, the members of the Iqbal family had already filed multiple actions against each other related to the care and treatment of the elder Iqbals. These actions included a family law matter in which a protective order was entered on July 26, 2017, that protected Zafar, Kaneezan, and Nazia from Ahsan.

3

<u>The</u> <u>2019</u> <u>Petitions</u>

In April 2019, under the representation of counsel who is not a party to this action, Shazia and Ahsan filed Yolo County Superior Court Case No. PC19-89 (Case No. PC19-89), a petition for the conservatorship of the person and estate of Zafar. Shazia filed an amended petition, dropping Ahsan as a copetitioner, in October 2019. Gevelinger did not file the amendment.

In November 2019, in Case No. PC19-89, on behalf of Shazia, Gevelinger filed a petition to revoke the general durable powers of attorney over financial affairs of Zafar and advanced healthcare directive (petition to revoke) that were in the name of Nazia. Malik was not a party to the petition, though it does mention his participation in transferring title of Zafar's home to Nazia and Malik.

The trial court denied the petition to revoke in a January 28, 2020, order. Some of the statements and directives contained in that order provide some context for understanding the instant action.

Specifically, the court observed that, "it appears that in October 2019 Shazia without any Power-of-Attorney authority and without a Court order took Zafar to the Bank and pension office, knowing that Zafar lacked capacity, and somehow executed a plan to empty his bank account and freeze his retirement payments. Her intent was to cut-off Nazia's control. Her conduct, with this case pending, shocks the conscience. [(Fn. omitted).] She justified her self-help plan as having no choice and that she herself did not gain from her conduct. But there is no reasonable explanation or justification for her misconduct."

The court revisited this issue in discussing the general credibility of the witnesses in the proceedings on the petition to revoke, stating, "[a]s to Shazia, Zafar believed that she was aiding and abetting Ahsan's conduct against him and he said so in his affidavit. She also, as noted above, engaged in the highly irregular and counter-productive act of

4

using Zafar to freeze his own bank and pension accounts, at a time in which he clearly lacked capacity and Nazia held power of attorney and this case was pending. As to Moshan, his testimony in Court against Nazia contradicted an earlier statement he provided to the Court Investigator wherein he supported Nazia's care of Zafar. Ever more concerning, however, Moshan forged Nazia's signature on a document allegedly limiting her control over the Davis residence. The evidence of forgery was supported by expert testimony. Meanwhile, Shazia then took the forgery and advocated for its authenticity when any reasonable person would have accepted the conclusion of the expert witness. The credibility of the siblings was compromised for these reasons."

While, as indicated, the Yolo County Superior Court did deny the petition to revoke, it did not find Nazia's conduct to be without blemish. Notably, it observed that there were some payments made from an account held in her and Zafar's name that "clearly" appeared to be for her personal benefit, and it stated, "these stray and isolated payments do not amount to a material breach of her fiduciary duty under the totality of circumstances, but they are, nonetheless, problematic and if they continued, they would rise to the level of a breach." Consequently, it ordered Nazia to prepare a monthly budget for Zafar, to prepare an accounting of the income and expenses for Zafar moving forward, and to work with banks to make sure accounts were properly in Zafar's name only with her being identified as having power of attorney.

Gevelinger filed a motion to set aside the denial of the petition to revoke in February 2020, which the court denied following a May 29, 2020, hearing.

On July 21, 2021, Gevelinger filed a petition to compel an accounting and to inspect records in Case No. PC19-89 on Shazia's behalf. As part of the request, Gevelinger sought judicial notice of the January 28, 2020 order, which Gevelinger attached. However, according to a request for judicial notice and supporting declaration filed by Malik in support of the anti-SLAPP motion, while the original order attached a minute order from a 2017 hearing at which Kaneezan and Zafar were added as

5

protectants to a restraining order issued against Ahsan, the copy Gevelinger offered to support the petition to compel accounting did not attach the 2017 minute order.

Elder Abuse Actions

On February 4, 2020, Gevelinger filed a financial elder abuse action in the Yolo County Superior Court on behalf of Shazia, Moshan, and Ahsan, and the action named Malik and Nazia as the defendants. On February 11, 2020, Gevelinger caused a notice of pendency of an action to be recorded which alleged real property was the subject of the pending litigation. Gevelinger filed a request for dismissal without prejudice of the action on June 22, 2020.

On June 5, 2020, Gevelinger filed an elder abuse action in the Sacramento County Superior Court on behalf of Shazia, Moshan, and Ahsan, and that action also named Malik and Nazia as the defendants. On June 18, 2020, Gevelinger caused a notice of pendency of action to be recorded which alleged real property was the subject of the pending elder abuse action in Sacramento County Superior Court.

In January 2021, the Sacramento Superior Court granted a motion to change venue of the Sacramento action to Yolo County. On June 15, 2021, Gevelinger caused a lis pendens to be recorded which alleged real property was the subject of pending litigation in Yolo County.

The transferred action was consolidated with an action Nazia and Malik had filed against Ahsan, Sadia, Shazia, and Moshan. According to the declaration filed by Gevelinger in support of the anti-SLAPP motion, the transferred action remained pending at the time Gevelinger filed the anti-SLAPP motion.

This Action

Complaint

Plaintiffs in pro. per. filed the complaint in this action on February 15, 2022, in Sacramento Superior Court. It contains eight causes of action. Every cause of action

6

includes language incorporating all the preceding allegations made in the complaint—i.e., both the general allegations and the allegations contained in any previously set forth cause of action.

The first four causes of action allege malicious prosecution. The first and second causes of action are based on Gevelinger's representation of Shazia in the proceedings regarding the petition for conservatorship and petition to revoke. The third cause of action is based on Gevelinger's representation of Nazia's siblings in the elder abuse action they originally filed in Yolo County Superior Court. The fourth cause of action is based on the elder abuse action Gevelinger originally filed in Sacramento Superior Court. Each of the malicious prosecution actions alleges that in pursuing the petitions or actions, defendants "conspired and systemically acted with oppression, fraud and malice, including, but not limited to, acting with an intent to cause injury to PLAINTIFFS, and engaging in despicable conduct with a willful and conscious disregard of the rights of others, including PLAINTIFFS."

The fifth through seventh causes of action allege abuse of process. The fifth cause of action is based on Gevelinger filing notices of lis pendens in the elder abuse actions. The sixth cause of action is based on Gevelinger omitting an attached page to the January 28, 2020, order when Gevelinger submitted a copy of the order to support the motion for accounting and to compel inspection of records on July 21, 2021. The seventh cause of action alleges that Gevelinger would refuse to accept service and return court documents served on her office by Malik in legal proceedings.

The eighth cause of action is labeled as a fraud cause of action. It alleges that, with Gevelinger's knowledge, support, and assistance, Gevelinger's clients forged Zafar's signature to redirect mail, stimulus checks, and other payments, and to prevent plaintiffs from receiving timely service in various matters. It alleges Gevelinger's clients also forged identifications for Zafar to steal funds from his bank, social security payments, and CalPERS retirement account. It alleges that Gevelinger was "fully aware

7

of their clients' forgeries and frauds and benefited from them for financial gain because" they enabled Gevelinger's clients to pay for Gevelinger's representation in legal proceedings.

None of the causes of action is specifically labeled as a cause of action for conspiracy. None of them uses language that explicitly and specifically states that Gevelinger "conspired with their clients."

Anti-SLAPP Motion and Attorney's Fees Motion

Gevelinger filed an anti-SLAPP motion and a request for attorney's fees on March 25, 2022. Malik filed an opposition in pro. per.

The trial court issued a tentative ruling granting the anti-SLAPP motion. Neither party requested oral argument, and the court affirmed its tentative ruling.

We will provide more details regarding the parties' arguments and the trial court's reasoning regarding the anti-SLAPP motion in our discussion below.

Gevelinger filed and caused to be served a notice of entry of judgment attaching the trial court's minute order granting the anti-SLAPP motion on May 20, 2022. The plaintiffs filed a timely notice of appeal to the trial court's order granting the anti-SLAPP motion.

Pursuant to a finding contained in the trial court's order on the anti-SLAPP motion, Gevelinger filed a separate motion for attorney's fees. The trial court awarded Gevelinger total fees and costs of $14,960. The plaintiffs filed a timely appeal of this order.

8

DISCUSSION

I

*Request for Judicial Notice*

The plaintiffs have filed a request for judicial notice, seeking judicial notice of (1) an order granting expungement of the lis pendens filed on July 6, 2022, in the Yolo County Superior Court; and (2) a substitution of attorney in Case No. PC19-89 that shows when Gevelinger began representing Shazia in that action.  Gevelinger filed an opposition to the request.  We deferred ruling on the request.

These items were not before the trial court when it considered the anti-SLAPP motion below, and they have no bearing on the decision in this appeal.  As such, we deny this request.  (Evid. Code, § 459.)

II

*Nature of Anti-SLAPP Motions and Standards of Review*

"A cause of action 'arising from' the defendant's exercise of the constitutional right of free speech or petition for the redress of grievances, is commonly known as a SLAPP suit. . . ."  (*Callanan v. Grizzly Designs, LLC* (2022) 81 Cal.App.5th 517, 524 (*Callanan*).)  "A SLAPP suit is subject to a special motion to strike pursuant to section 425.16, also known as the anti-SLAPP statute."  (*Ibid.*; see also *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 139.)

In subdivision (a), of the anti-SLAPP statute our Legislature declares, "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be

9

chilled through abuse of the judicial process.  To this end, this section shall be construed broadly."  (Code Civ. Proc., § 425.16, subd. (a).)

Under subdivision (b) of Code of Civil Procedure, section 425.16, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes[, among other things]: (1) any written or oral statement or writing made before a . . . judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law . . . or, (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (Code Civ. Proc., § 425.16, subd. (e).)

"Resolution of a special motion to strike, also referred to as an anti-SLAPP motion, 'requires the court to engage in a two-step process.'  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [].)"  (*Callanan*, *supra*, 81 Cal.App.5th at p. 525.)  First, "the defendant has the initial burden to make a prima facie showing that the plaintiff's claims are subject to section 425.16."  (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 (*Chavez*).)  Regarding this requirement, "the court must determine whether 'the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or

10

California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).)' [Citation.]" (*Callanan*, at p. 525.) "If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor." (*Chavez, supra*, 94 Cal.App.4th at p. 1087.)

"We review de novo the grant or denial of an anti-SLAPP motion, and we exercise our independent judgment in determining whether the challenged claims arise from protected activity." (*Callanan, supra*, 81 Cal.App.5th at p. 525.) In exercising our independent judgment, "in addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. (§ 425.16, subd. (b)(2); *Navellier v. Sletten*[ (2002)] 29 Cal.4th [82,] 89.) We do not, however, weigh the evidence, but accept the plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

We observe, however, that even in cases of de novo review, we presume an order or judgment of the trial court is correct and indulge all presumptions in favor of its correctness. (*Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 776-777.) It remains an appellant's burden to affirmatively demonstrate error. (*Ibid.*)

## III

### *First-Prong Analysis*

A.    Trial Court Arguments and Ruling on First Prong Below

In the anti-SLAPP motion, Gevelinger argued, "the focus of all of the claims made in each of the causes of action arise from multiple court actions and proceedings . . . . Not one allegation against these defendants arises from, or is focused on, anything other than the judicial proceedings . . . wherein defendants represented plaintiffs' siblings. . . .

11

[¶] Based on the Verified Complaint itself, these moving defendants have clearly established and met their burden supporting a clear determination that the entire Complaint arises out of protected conduct." When making this argument, Gevelinger cited to paragraphs contained in each cause of action that they believed supported their contention that every cause of action arose from their representation of Nazia's siblings in legal proceedings.

In the opposition to the anti-SLAPP motion, with respect to the first prong of the anti-SLAPP analysis Malik wrote in all, "Plaintiffs do not dispute that § 425.16 applies to actions for malicious prosecution. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735 ['By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit'].)" In other words, the opposition explicitly conceded that the first four causes of action arose out of protected activity and said nothing at all about whether the remaining four causes of action arose out of protected activity.

In their reply in support of the anti-SLAPP motion, Gevelinger observed that the opposition did not challenge the argument or evidence presented by Gevelinger with respect to the first prong of the anti-SLAPP analysis.

In its tentative ruling, which was adopted as a final ruling when neither party requested oral argument, the trial court found that "all of Plaintiffs' claims against Defendants are predicated upon actions that occurred in the context of Defendants' representation of clients adverse to Plaintiff[s] in prior actions. Accordingly, Defendants have met the first prong of the anti-SLAPP statute by showing each of the claims arises from constitutionally protected conduct of filing and maintaining a lawsuit."

B.      The Plaintiffs Have Forfeited Arguments Regarding the First Prong

In their briefing, the plaintiffs now raise arguments about whether the fifth through eighth causes of action, particularly the eighth, arise out of protected activity and what

12

the impact should be of a finding one cause of action did not arise out of protected activity should be on the analysis of the entire anti-SLAPP motion.

First, the plaintiffs argue that it was Gevelinger's burden to demonstrate that all of the causes of action arose from protected activity.

Second, they argue that the eighth cause of action, which was styled as a fraud action, did not arise from protected activity, because "[h]owever titled" the underlying wrong at issue was really the law firm knowingly receiving funds stolen from Zafar Iqbal. In so doing, the plaintiffs drop a footnote implicitly acknowledging that to the extent it attempted to assert a fraud cause of action, the eighth cause of action might have been subject to a demurrer, but that a sustained demurrer would have resulted in the opportunity to amend the cause of action to clarify the legal theory underlying the claim. Notably, they do not then explain what the elements of the new theory would have been and how they would have pleaded those elements in a way that identified an injury to the plaintiffs—rather than Zafar—that did not arise from a protected activity.

Third, the plaintiffs argue that when a cause of action is a mixed cause of action, based on both protected and unprotected activity, a defendant bringing an anti-SLAPP motion must identify all allegations of protected activity and the relief supported by them. They maintain that the trial court erred under recent case law when it failed to require Gevelinger to satisfy this burden.

Fourth, defendants argue that because Gevelinger failed to meet the burden to show that each cause of action arose from protected activity, the trial court should have denied the anti-SLAPP motion.

Finally, the plaintiffs argue that to the extent this issue was not raised below, they should still be able to raise it here as it is a question of law and the trial court was not deprived of the opportunity to consider the issue, as evidenced by the fact that it did engage in some analysis as to whether the complaint arose out of protected activity.

13

In other words, the plaintiffs argue that Gevelinger failed to properly separate out a first-prong analysis for each cause of action below, and that Gevelinger could not have met her burden regarding the first prong on one of those eight causes of action. The plaintiffs believe the net result of this should be that we order Gevelinger's entire anti-SLAPP motion denied on remand and allow all causes of action to proceed regardless of the strength of the anti-SLAPP motion with respect to the other seven causes of action. The plaintiffs argue that in making Gevelinger pay the cost of her purported failure to make a properly formed argument in the trial court, we should ignore that they failed to make *any argument* on the first-prong below.

In contrast, Gevelinger argues that the plaintiffs forfeited these arguments by not raising them below and takes the position that, in these circumstances, we should not exercise our discretion to consider these new arguments. On this point, we agree.

" '[A] new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal.' (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907[].)" (*Ramirez v. Superior Court* (2023) 88 Cal.App.5th 1313, 1335.) Yet, "[m]erely because an issue is one of law, does not give a party license to raise it for the first time on appeal . . . . Whether an appellate court will entertain a belatedly raised legal issue always rests within the court's discretion. (*POET, LLC v. State Air Resources Bd.* (2013) 218 Cal.App.4th 681, 750–751 [].)" (*Farrar v. Direct Commerce, Inc.* (2017) 9 Cal.App.5th 1257, 1275, fn. 3; see also *Ramirez, supra*, at p. 1335 ["Notwithstanding, an appellate court is under no mandatory duty to consider 'forfeited arguments that raise pure questions of law.' (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567[ (*Wittenberg*)])"].) "We 'are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider.' (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [].) Accordingly, we deem Appellants' challenge to this issue forfeited." (*Meridian*

14

*Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 700, fns. omitted (*Meridian*).)

In *Wittenberg, supra,* 51 Cal.App.5th at page 567, the court stressed two factors when it considered a party's argument that it ought to exercise its discretion to consider forfeited arguments on pure questions of law. First, it observed, "courts are more inclined to consider new legal issues on appeal where the public interest or public policy is involved. (*POET, LLC v. State Air Resources Bd.*[, *supra*,] 218 Cal.App.4th [at pp.] 750–751 [].) The instant matter, however, involves only a private dispute and does not implicate matters of public interest or policy." (Accord, *Meridian*, *supra*, 67 Cal.App.5th at p. 700.) Here too, this action is about a private dispute that does not implicate matters of public interest or policy.

Next, the court explained " 'fairness is at the heart of a waiver claim. Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.] Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' (*JRS Products, Inc. v. Matsushita Electric Corp. of America*[, *supra*,] 115 Cal.App.4th [at p.] 178 [].)" (*Wittenberg*, *supra*, 51 Cal.App.5th at p. 567.)

Here, the plaintiffs not only failed to raise the specific arguments they have raised here, they failed to make *any* argument that the defendants would be unable to meet their burden on the first prong of the anti-SLAPP analysis. The only mention of the first prong is a concession. Furthermore, the entire opposition does not set forth argument that is specific to the merits of either prong of the anti-SLAPP analysis with respect to the one cause of action the plaintiffs now point to as the central basis for overturning the entirety of the trial court's order. Thus, the opposition in the trial court conveyed the impression

15

that the plaintiffs had no quibble with Gevelinger's position that the entire complaint arose from protected activity. Considering these new arguments on appeal would allow the very sort of bait and switch that forfeiture principles are designed to avoid.

In their opening brief, the plaintiffs suggest there was no real problem with their failure to raise these arguments below because "the trial court reached the issue" of whether the first prong was satisfied—i.e., it considered it. But this is an overly simplistic view of the impact the plaintiffs' failure to raise these arguments—and their arguments regarding Civil Code section 1714.10, discussed below—may have had on the proceedings in the trial court. The trial court's resolution of these issues served as the central underpinnings of its decision to grant the anti-SLAPP motion. Because it relied on its ruling on those issues, the trial court did not consider other arguments raised by the parties, including arguments on standing, statutes of limitations, the impact of the attorney-client and attorney work product privileges on Gevelinger's ability to defend the case, and whether the plaintiffs would be able to succeed on some basic elements of the causes of action. We are now left without any sort of trial court reasoning on these other arguments and the possible evidence supporting them.

Hence, though "[w]e do have discretion to address pure questions of law posed for the first time on appeal (*Resolution Trust Corp. v. Winslow* (1992) 9 Cal.App.4th 1799, 1810[ ]), . . . we will not do so here." (*Kucera v. Lizza* (1997) 59 Cal.App.4th 1141, 1150.)

IV

*Second-Prong Analysis: Forfeiture of Civil Code section 1714.10 Argument*

A.      <u>Trial</u> <u>Court</u> <u>Arguments</u> <u>and</u> <u>Ruling</u> <u>Regarding</u> <u>Civil</u> <u>Code</u> <u>section</u> <u>1714.10</u>

Under Civil Code section 1714.10, subdivision (a), "[n]o cause of action against an attorney for a civil conspiracy with his or her client arising from any attempt to contest or compromise a claim or dispute, and which is based upon the attorney's representation

16

of the client, shall be included in a complaint or other pleading unless the court enters an order allowing the pleading that includes the claim for civil conspiracy to be filed after the court determines that the party seeking to file the pleading has established that there is a reasonable probability that the party will prevail in the action."

"Failure to obtain a court order where required by subdivision (a) *shall be a defense* to any action for civil conspiracy filed in violation thereof." (Civ. Code, § 1714.10, subd. (b), italics added.) "The purpose of section 1714.10 is to discourage frivolous claims that an attorney conspired with his or her client to harm another. Therefore, rather than requiring the attorney to defeat the claim by showing it is legally meritless, the plaintiff must make a prima facie showing before being allowed to assert the claim." (*Klotz v. Milbank, Tweed, Hadley & McCloy* (2015) 238 Cal.App.4th 1339, 1350.)

In the anti-SLAPP motion, on the question of the plaintiffs' likelihood of prevailing on the merits, the defendants argued the entire complaint needed to be stricken because "allegations raised by plaintiffs of these defendants['] 'conspiracy' with their clients runs throughout each cause of action. . . . Based on plaintiffs['] failure to comply with this statutory mandate, the entire Complaint must be stricken."

In support of their argument that the complaint alleged a conspiracy between Gevelinger and Gevelinger's clients, Gevelinger cited to (1) various paragraphs contained in the malicious prosecution causes of action in which the plaintiffs alleged that in initiating and continuing actions against the plaintiffs Gevelinger "conspired and systemically acted with oppression, fraud and malice"; (2) paragraphs in the remaining causes of action that incorporated all prior allegations into subsequent causes of action— i.e., incorporated the allegations that referred to how Gevelinger conspired; and (3) a paragraph in the eighth cause of action, which was styled as a fraud cause of action, that alleged Gevelinger's clients "with the full knowledge, support and assistance of [defendants] forged the signature of Zafar Iqbal to change his address . . . in order to

17

redirect mail, stimulus checks and other payments, as well as preventing [plaintiffs] from receiving service and timely notice of proceedings in the Yolo County Superior Court. Defendants' Clients also forged duplicate IDs for Zafar Iqbal to steal funds from bank accounts, social security payments and his CalPERS retirement account. [Defendants] were fully aware of their clients' forgeries and frauds and benefited from them for financial gain because they enabled Defendants' Clients to pay for [Defendants'] representation."

In their opposition to the anti-SLAPP motion, the plaintiffs did not address the defendant's Civil Code section 1714.10 argument.

In their reply brief in support of the anti-SLAPP motion filed in the trial court, Gevelinger argued that the opposition, "fails to address the failure to obtain any order from the Court allowing the Complaint to be filed in the first instance and as required by Civil Code, Section 1714.10. The record available to this Court also establishes that no such permission was obtained. As such, the entire Complaint must be stricken, as further discussed [in] the moving papers."

In its tentative ruling, which was later affirmed by the trial court, the trial court began its second-prong analysis by considering the "recurring claims of conspiracy against Defendants as the foundation for each cause of action warrants that the claims fail at the outset." The court concluded that because the plaintiffs did not seek leave of the trial court to file the complaint, the entire complaint should be stricken. And, therefore, it concluded the anti-SLAPP motion should be granted.

"There being no request for oral argument, the [trial court] affirmed the tentative ruling."

18

B. Forfeiture of Civil Code Section 1714.10 Arguments

On appeal, the plaintiffs argue that Gevelinger failed to demonstrate that the complaint contains an action for civil conspiracy between the defendants and their clients and that, therefore, the order granting the anti-SLAPP motion should have been denied.

This argument has been forfeited and we will not consider it in determining if the trial court erred in the second prong of the anti-SLAPP analysis. (*Kucera v. Lizza, supra,* 59 Cal.App.4th at p. 1150.) Our reasons for this are like our reasons for declining to consider the plaintiffs' new arguments on appeal regarding whether the various causes of action alleged arose from protected conduct. First, this is a private dispute. (See *Wittenberg*, *supra*, 51 Cal.App.5th at p. 567.) Second, the plaintiffs made *no effort* to address this issue in their anti-SLAPP motion opposition papers and did not request oral argument in the face of a tentative ruling granting the anti-SLAPP motion on the basis of Gevelinger's Civil Code section 1714.10 argument. In other words, the plaintiffs' argument in this court is not a new nuance or additional argument made to support an already articulated position that Civil Code section 1714.10 does not apply. It is the first indication in the context on the anti-SLAPP motion that the plaintiffs think it should not apply to support the motion. (See *ibid.*)

In this context, we decline to exercise any discretion we have to consider the argument that the trial court erred in its Civil Code section 1714.10 analysis.

V

*Attorney's Fees*

The plaintiffs argue that because the decision on the anti-SLAPP motion should be reversed, so too should the trial court's award of attorney's fees to Gevelinger. Because we do not conclude the ruling on the anti-SLAPP motion must be reversed, we also deny this request.

19

DISPOSITION

We affirm the trial court's order.  The defendants and respondents shall recover their costs on appeal under California Rules of Court, rule 8.278(a).

                                  _____

                                  HULL, Acting P. J.

We concur:

_____

DUARTE, J.

_____

KEITHLEY, J.*

---

\* Judge of the Butte County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.